MORGAN MCAFEE, MADISON MCAFEE, AND JAMES ALFORD, PLAINTIFFS IN ERROR, *v.* JAMES T. CROFFORD.

In an action of trespass, for forcibly invading a plantation, carrying off some slaves, and frightening others away, it was proper for the plaintiff to give in evidence the consequential damages which resulted to his wood and corn.

It was proper, also, to allow the defendant to give in evidence a judgment against the owner of the plantation, as principal, and himself as surety, and his own payment of that judgment. It was allowable, both as an explanation of his motives, and to show how much he had paid; both reasons concurring to mitigate the damages.

Evidence was also allowable to show that arrangements had been entered into between the principal and surety, whereby time would be given for the payment of the debt. This was allowable, as a palliation of the conduct of the principal in removing his slaves without the State.

Evidence was also admissible to show that the surety had not been compelled to pay the debt, by showing that the creditor had been enjoined from collecting it. This was admissible, in order to rebut the evidence previously offered on the other side.

It was proper for the court to charge the jury that, in assessing damages, they had a right to take into consideration all the circumstances.

THIS case was brought up, by writ of error, from the District Court of the United States for the Northern District of Mississippi.

It was an action of trespass brought by Crofford, who described himself as a citizen of Tennessee, but who had a plantation in Arkansas. The suit was brought against the McAfees

and Alford, for acts which are described by the testimony stated in the first exception.. In the course of the trial there was but one bill of exceptions taken, which included the whole case.   It will be better understood by dividing the rulings of the court below, which is rendered necessary by the great length of the exception.

There were three exceptions to the admission of evidence, and one to the charge of the court to the jury.   The declaration contained four counts to the following effect:

1st. For entering upon the defendant's plantation, in the State of Arkansas, and forcibly carrying off and converting to the use of plaintiffs in error, a number of slaves of the value of $15,000.

2d. For entering, and by threats and violence, chasing and frightening away from said plantation, other slaves of the value of $40,000, whereby said slaves were greatly damaged and lessened in value.

3d. For the injury done to the defendant's business of planting, and cutting and selling cord-wood, by thus forcibly carrying off some of the slaves and frightening away others.

4th. For the value of the services of the slaves during the time they were gone from the defendant's plantation and wood-yard.

The plea was the general issue with an agreement, entered of record, that any matter constituting a good plea in bar might be given in evidence upon reasonable notice.

*First Exception.*   Upon the trial, Crofford, the plaintiff, offered to read the depositions of three of his neighbors, Parker, Driver, and Kafkemeyer, who testified in substance to the following facts: — About the last of October, or 1st of November, 1846, the McAfees and Alford, assisted by several other persons, all armed, crossed the Mississippi River in skiffs, and forcibly carried off twenty-one slaves from Crofford's plantation.   Crofford was absent.   His overseer remonstrated, but the assailants replied that they intended to take all the negroes, and would kill any one who interfered.   There were forty-two negroes, men, women, and children, on the plantation.; but, as the assailants were engaged for several days in catching and transporting them to the opposite bank of the river, four women and seventeen men were so frightened that they ran off into the swamps, and remained out five or six weeks.   Crofford had some 1,800 or 2,000 cords of wood cut at the time of these occurrences, which, on account of the absence of the slaves, was either floated off or greatly injured by a subsequent rise in the river.   In addition to this, the neighbor's hogs, cattle, horses, and mules broke into the plantation, and nearly destroyed 120 acres of growing corn; all of which was the consequence of the absence of the hands.

These witnesses testify, that the slaves carried over the river, being twenty-one in number, were worth $12,580; wood worth $2.50 per cord, and corn 50 cents per bushel.

To all this testimony the plaintiffs in error objected, but the court overruled the objection, and the depositions were read.

The counsel for the defendants below excepted.

Crofford then proved that his plantation was in Crittenden county, Arkansas, and then closed his case.

*Second Exception.* The defendants below, on their part, offered in evidence the record of a judgment, rendered in one of the courts of Mississippi, in favor of the Commercial Bank of Manchester against James T. Crofford and Morgan McAfee, for the sum of $4,143.93, together with divers writs of *fi. fa.* issued thereon, levied upon Crofford's property, delivery-bond given and forfeited, and *fieri facias* issued upon this. By virtue of this last *fi. fa.* the slaves forcibly carried away from the plantation, in Arkansas, were levied upon and most of them sold, producing the sum of $6,132, which fully satisfied the said execution.

The McAfees also proved that Morgan McAfee was only security for Crofford in the aforesaid judgment, and that at the time of executing the delivery-bond mentioned above, Crofford promised not to remove his negroes from Tallahatchie county, until said debts should be paid.

The McAfees then introduced a witness whose evidence, drawn out upon cross-examination, constituted the subject of this exception. The witness was introduced to prove various admissions made by Crofford in reference to the amount of his corn crop and his cord-wood; which witness, upon cross-examination, stated, that in the same conversations Crofford said that Morgan McAfee had agreed with him to obtain from the said Bank of Manchester an extension of one, two, and three years, in which to pay the said debt, and also to credit thereon a judgment of Crofford against Morgan McAfee, in the United States District Court at Pontotoc, for about $1,500 or $2,000. To this evidence, elicited on cross-examination, the McAfees excepted.

*Third Exception.* The McAfees then proved that before the trespass complained of, Morgan McAfee had paid the debt to the Bank of Manchester, which had assigned the judgment to Madison McAfee.

As rebutting testimony, Crofford offered to introduce the record of a proceeding by *quo warranto* in one of the courts in Mississippi, by which it appeared that at the time of the sale of the negroes upon said execution, the said bank, its agents, and its assignees, were enjoined from collecting any of its demands, though the levy upon a part of the negroes was made before the execution of the writ of injunction. Crofford also offered to

38 *

introduce records showing that he had existing unsatisfied judgments to the amount of $2,847 against Morgan McAfee. The defendants below objected to the admission of this rebutting testimony, but the court overruled the objection and admitted it, whereupon the McAfees excepted.

The charge of the court was as follows: The court instructed the jury that a trespass had been committed by the defendants, "if the jury believe from the testimony that the defendant had a judgment in Mississippi against the plaintiff, the defendant would not be authorized to collect said judgment by forcibly removing the property of the plaintiff from the State of Arkansas to the State of Mississippi."

"That in assessing damages the jury had a right to take into consideration all the circumstances;" to which said first charge the counsel for the defendants at the time excepted, before the jury returned from the bar of the court; and to which several matters and things the said defendants, by their said counsel, excepted, and tendered their said bill of exceptions as hereinbefore stated, and before the jury retired from the court, and prayed that the same might be signed and sealed by the court and made part of the record herein; all which is done accordingly." S. J. GHOLSON. [SEAL.]

The jury found a verdict for the plaintiff and assessed the damages at $10,613.72.

The cause was argued in this court by *Mr. Brooke* and *Mr. Volney E. Howard,* for the plaintiffs in error, and *Mr. Snethen* and *Mr. F. P. Stanton* for the defendant in error.

The counsel for the plaintiffs in error contended, that the verdict is manifestly against the testimony. The principle upon which damages are given in an action of trespass is to indemnify the plaintiff for what he has actually suffered, taking into consideration all the circumstances of the case. Bateman *v.* Goodwyn, 12 Conn. 575. In this case Crofford in reality sustained no damage, as the property taken was disposed of in discharge of his own debt. "In an action of trover, when the property converted has been sold and the proceeds applied to the payment of the plaintiff's debt, or otherwise to his use, it goes in mitigation of damages." Pierce *v.* Benjamin, 14 Pick. 356; Prescott *v.* Wright, 6 Mass. 20; Caldwell *v.* Eaton, 5 Mass. 399; 14 Shep. 126.

Whatever damages Crofford sustained, if any, were the consequences of his own wrong in removing this property beyond the limits of the State of Mississippi, in violation of his agreement with his surety, McAfee. If this verdict is permitted to

stand, Crofford will be suffered to take advantage of his own wrong in having his debt paid, amounting, at that time, to over six thousand dollars, and in addition receive, as a bounty for his dishonesty, the large amount assessed by the jury.

The estimate put upon the negroes by the witness, Parker, is proven to be too great by the result of the sale, they only bringing, at said sale, about half of said estimate. There is no proof. or pretence that the sale was not fair. It was made by the sheriff, and is to be presumed to have been made in a legal manner, after due notice given.

The evidence as to the consequential damages to the corn and wood is too loose and indefinite to have received the consideration of the jury. It should have been ruled out by the court.

" Consequential damages are not recoverable in an action of trespass *vi et armis*, for taking away goods." Alston *v.* Huggins, 2 Const. Rep. 688.

" Opinions of witnesses as to the amount of loss inadmissible." 23 Wend. 425.

McAfee may not have acted strictly within legal bounds in going to Arkansas, and taking the negroes by force; but when it is recollected that he was Crofford's surety, that Crofford had deceived and defrauded him by taking the negroes out of the State, thus leaving his surety to suffer, and this, too, in violation of an express agreement, surely Crofford, the original wrong-doer, whose criminal acts superinduced the necessity of McAfee's proceedings, cannot be heard to complain.

Crofford recognized the payment and satisfaction of the bank judgment by endeavoring to take advantage of it in defence to a suit brought against him in equity, wherein the lien of this judgment was complained of. The deposition of J. J. Hughes, the cashier of the bank, proves the suretyship of McAfee.

The record of the proceedings against the bank is wholly irrelevant, and the court erred in admitting it. At the time of the transfer of the judgment to Madison McAfee, the proceeding had not been commenced. No judgment of forfeiture was ever rendered. The other judgments introduced are also irrelevant, and have no bearing whatever on the case. At most they offset one another, and, as far as they are concerned, show but little indebtedness either way.

In cases of this sort, appealing to principles of natural justice more than to strict rules of law, it is conceived that the equity maxim, that the complaining party should come into court with clean hands, applies here as well as in a court of chancery.

It may be said that the bank judgment was satisfied by the payment by McAfee, and that the transfer to his brother was

thereupon inoperative. Be this as it may, the moral obligation on Crofford remained the same. The attempt to evade the payment of a just debt, and suffer the burden of it to fall on his surety, is the wrong complained of on our part—the wrong that gave occasion to the trespass and its consequences.

The charge of the court is manifestly incorrect. It assumes the fact that a trespass had been committed, and leaves nothing for the jury to determine in this particular. The remainder of the charge,—that "if the jury believe, from the testimony, that the defendant had a judgment in Mississippi against the plaintiff, the defendant would not be authorized to collect said judgment by forcibly removing the property of the plaintiff from the State of Arkansas to the State of Mississippi," may be, and doubtless is, a correct proposition of law; but it does not necessarily follow that the existence of the judgment might not have been properly adduced to show that no actual damage had accrued. The manner in which the charge was given was well calculated to impress the jury with the idea that, although they "had a right to take into consideration all the circumstances," yet that the judgment was no circumstance at all worthy of their consideration.

The counsel for the defendant in error contended that the only questions arising upon this record are : first, upon the charge to the jury ; and, second, as to the several items of proof made by the defendant in error, and excepted to by the plaintiffs.

As to the first of these questions, no authorities can be necessary. There is obviously no error in the instructions of the court to the jury. No bad faith on the part of Crofford, nor any breach of contract, could have justified the plaintiffs in error in going with an armed band into the State of Arkansas, and taking property by force, in order to subject it to an execution in Mississippi. This was a trespass, and if the judge said so to the jury, he was fully sustained by the proof. But this court has said, "it will not examine the charge of the inferior court to the jury upon mere matters of fact and its commentaries upon the weight of evidence. Observations of that nature are understood to be addressed to the jury merely for their consideration as the ultimate judges of the matters of fact." Carver. v. Jackson ex dem. Astor et al., 4 Peters, 80, 81 ; Evans v. Eaton, 7 Wheaton, 426 ; Garrard v. Lessee of Reynolds et al., 4 How. 123 ; Games et al. v. Stiles, 14 Pet. 322 ; Hyde & Gleises v. Boraem & Co. 16 Pet. 169.

The exceptions to the testimony of the witnesses who proved the trespass, and the damages resulting to the crops and cordwood, were evidently not well taken. All the direct and neces-

sary consequences of a trespass may be given in evidence, to enable the jury to estimate the full amount of damages incurred. Dickinson *v.* Boyle, 17 Pick. 78. In this case the court say: " Where the act complained of is admitted to have been done with force, and to constitute a proper ground for an action of trespass *vi et armis,* all the damage to the plaintiff, of which such injurious act was the efficient cause, and for which the plaintiff is entitled to recover in any form, may be recovered in such action, although in point of time such damage did not occur till some time after the act done." Johnson *v.* Courts, 3 Harris & McH. 510; Ogden *v.* Gibbons, 2 South. 536; Duncan *v.* Stalcup, 1 Dev. & Bat. 440; Hardin et al. *v.* Kennedy, 2 McCord, 277; Damron *v.* Roache, 4 Humph. 134; Wilcox *v.* Plummer, 4 Pet. 172, 182; Barnum *v.* Vandusen, 16 Conn. R. 200. All the circumstances of aggravation may be proved without minute averment. Warfield *v.* Walter, 11 G. & J. 80; Hammatt *v.* Russ, 4 Shepl. 171; Carrington *v.* Taylor, 11 East, 571; Keeble *v.* Hickeringill, Id. 574, n.; Id. 11 Mod. 74, 130; Id. 3 Salk. 9; 2 Greenl. Ev. § 268, a, 254, 270, 272, 635, a. See note, 2 Greenl. § 243, and the authorities there quoted.

The exception to the statements of Crofford, drawn out upon cross-examination, is equally untenable. They were parts of the same conversations which the witness detailed in his examination in chief. But the testimony was not material in any point of view, and could not have influenced the verdict of the jury. 1 Greenl. Ev., § 201, and the authorities quoted in the note thereto.

As to latitude of cross-examination, see 1 Greenl. 449, 450, and notes.

As to immateriality of testimony, Turner *v.* Fendall, 1 Cranch, 131.

Erroneous instructions, if immaterial, not cause of reversal. United States *v.* Wright, 1 M'Lean, C. C. R. 509; Forsyth *v.* Baxter, 2 Scam. 9.

Exceptions taken to the records introduced as rebutting testimony — the proceeding by *quo warranto,* and the judgments in favor of Crofford *v.* McAfee. As to the first of these, it is certain the Bank of Manchester, at the time of the execution sale of Crofford's negroes, was enjoined by a competent tribunal from making that sale. It was competent to show this fact, not to invalidate the sale, but to show the reckless disposition of the parties, and their contempt of lawful authority. It does not appear what effect this testimony had upon the case, or what instructions the judge gave in regard to it. The jury seem to have deducted the debt of $6,000, which was paid by the sale of the slaves, from the whole amount of damages, and given

their verdict for the balance. This appears from the fact that the amount of the verdict is not equal to the value of the slaves actually taken away and sold, as that value was proved by three uncontradicted witnesses, besides the damage to the crop, the wood, and the slaves who took refuge in the swamps. The proof of the injunction could not have operated to prevent this mode of adjustment by the jury; it was admissible evidence only to show the *animus* of the plaintiffs in error; their disregard of the laws of their own State as well as those of Arkansas, throughout the whole of these violent proceedings.

The judgments of Crofford *v.* Morgan McAfee were wholly immaterial to the case, except so far as they tended to palliate the bad faith of Crofford in leaving his security to pay his debt. In this point of view they were admissible as rebutting testimony; feeble and unimportant it may be, but still admissible. Havis *v.* Taylor, 13 Ala. 324; Gilpins v. Consequa, Pet. C. C. P. 85; Pettibone *v.* Deringer, 4 Wash. C. C. R. 215. Even if the admission of this testimony was erroneous, the court will not reverse, when it is plainly immaterial and inoperative in the case. Zacharie & wife *v.* Franklin, 12 Pet. 151.

Mr. Justice McLEAN delivered the opinion of the court.

This case is before us on a writ of error, to the District Court for the Northern District of Mississippi.

A judgment was obtained in favor of the Commercial Bank of Manchester against James T. Crofford and Morgan McAfee, in the State Court of Tallahatchie county, Mississippi, the 24th of November, 1840, for the sum of $4,143.93, on which an execution was issued, and levied on sundry slaves of Crofford, who owed the debt; McAfee, the other defendant, being his security, a delivery-bond for the property was executed, which was forfeited the 22d of November, 1841, by which forfeiture the bond had the effect of a judgment. On this latter judgment an execution was issued, which was levied on twenty-one negroes owned by Crofford, all of whom, except three, were sold by the sheriff for $6,132.

Some time after the first levy, it appears that Crofford removed with his slaves across the Mississippi, and settled on a plantation on that river, in Arkansas, not far from his former residence in Mississippi.

A short time before the last levy, Morgan McAfee, with an armed force, in the absence of Crofford, crossed the river, seized, from day to day, twenty-one of the negroes on his plantation, and brought them into Mississippi. The other slaves of Crofford were alarmed and absconded, and were not reclaimed before the lapse of from four to six weeks. The overseer of Crofford

remonstrated, and some steps were taken to arrest the proceedings of McAfee, but his force was too strong, and he threatened to kill any one who should interfere with him in taking off the negroes. For this trespass an action was brought against the plaintiffs in error. In the declaration, it was alleged, that by reason of the trespass, the plaintiff lost the services of thirty negro men and as many women, &c., which, through fear, absconded, besides the number taken by McAfee, and that he was subjected to great expense in reclaiming them; that by taking the slaves, chasing, and frightening the others from his farm and wood-yard and from and about the business of the plaintiff, he was greatly damaged, &c. The defendants pleaded not guilty, &c. A verdict for $10,613 was rendered by the jury, on which a judgment was entered. To reverse that judgment the writ of error was brought.

The exceptions arise out of the rulings of the court and the charge to the jury.

The trespass was proved as charged in the declaration. The party were several days in searching for and arresting the negroes, and all on the plantation not taken were frightened and fled.

The male slaves were employed in cutting cord-wood, and supplying Crofford's wood-yard. He had, at the time of the trespass, it was proved, from eighteen hundred to two thousand cords of wood cut on the low ground back from the river, which was worth two dollars per cord, and sold at the yard for two dollars and fifty cents; the hauling cost fifty cents per cord; that the river became swollen by rain, and having no hands to remove the wood to the yard, much of it was carried off by the flood, and what remained, was so injured by being under water as to make it unsalable; that having no hands to attend the crop, the horses, mules, and other stock of the neighborhood, broke into the cornfield and destroyed a large part of it; that corn was worth fifty cents a bushel at that time. There were one hundred and twenty acres in corn, which, with proper attention and protection, would have yielded forty bushels to the acre.

The defendant offered in evidence the judgment of the Commercial Bank against Crofford, as principal, and himself as surety, and a receipt for the payment of the judgment, amounting to the sum of $6,233.38, in mitigation of the damages claimed on account of the trespass, which, though objected to by the plaintiff, was admitted.

The evidence was admissible on two grounds. First, to explain the motive of the plaintiffs in error in committing the trespass, and thereby, in some degree, to mitigate the damages

claimed. Second, to reduce or abate from the damages the amount paid in discharge of the judgment, not as an offset, but in mitigation of the injury done. This right resulted from the relation between the parties. McAfee was a co-defendant with Crofford in the judgment, but he was security only, and he had a right to expect, from the forthcoming bond and the assurances of Crofford, that the negroes first levied on would be delivered up in satisfaction of the second execution. In an answer in chancery, he alleged that the bank judgment had been satisfied. A stranger could not take the property of his neighbor, have it sold under process, and apply the proceeds in discharging the debts of his neighbor, and then claim the right to have such payments received as a set-off, or in mitigation of the damages done by the trespass.

The plaintiff below then introduced the transcripts of two judgments in the District Court against Morgan McAfee, one in favor of Crofford, the other assigned to him, amounting to twenty-one hundred dollars and upwards, which, though objected to by the defendants, was admitted by the court. For what purpose this evidence was introduced was not stated; and under such circumstances, if the records of the judgments were admissible for any purpose, the exception to the evidence cannot be sustained.

It was proved, that at New Orleans, before the trespass was committed, McAfee agreed with Crofford to return to Mississippi and make an arrangement with the bank to give one, two, and three years, for the payment of the judgment against Crofford and himself; and he agreed to credit on said judgment the above judgments against himself.

We think that those judgments were properly admitted as evidence, because they conduced to show that Crofford, in removing with his slaves to Arkansas, was less blamable than charged by the defendant McAfee, as he had grounds to believe that a part of the bank judgment would be paid by McAfee, and that an indulgence of some years would be obtained, for the payment of the balance.

The judgments being admissible on this ground, it is unnecessary to inquire whether they were not evidence to reduce the bank judgment paid by McAfee, under his agreement. This point might have been made, if the court had been requested to instruct the jury that this effect could not be given to the evidence by the jury. The judgments being admissible for the purpose first stated, it is unnecessary to inquire, if it were practicable to do so, which it is not, how the evidence was applied by the jury.

The record of certain proceedings against the Commercial

Bank of Manchester, in the nature of a *quo warranto*, was offered by the plaintiff in evidence, to show that the bank was enjoined from proceeding to. collect debts. This proceeding was had in the Circuit Court of Yazoo county. An injunction was issued as stated. And at November term, 1846, the court decided on the demurrers filed in favor of the bank, from which decision an appeal was taken to the High Court of Errors and Appeals of the State. The court admitted the evidence, overruling the objections made to it.

These proceedings, it is presumed, were pending in the Court of Appeals at the time the trespass was committed, as the contrary does not appear; but it is not perceived that the evidence could have had any other effect than to rebut the mitigating circumstances relied on by the defendants. In this view the evidence was admissible.

The loss of the services of the slaves, by the trespass, necessarily resulting from the abduction of a part of them, and driving off the others, are clearly within the rule of damages in trespass; and we think the loss of the cord-wood, as proved, and the injury to the corn-crop, were also within it.

It is argued, that unless the inclosure for the protection of the crop was such as the law required, no damages could be allowed for the trespasses charged, and that the owners of the trespassing animals were liable, and consequently the plaintiffs in error were not liable.

Whether there was, at the time, a law in Arkansas regulating inclosures, we have not examined, as it is a matter which can have no influence in the case. The question was fairly submitted to the jury, whether, under the facts and circumstances proved, the injury to the corn-crop resulted from the loss of the hands. This was a matter of fact for the jury, whether the fence of the plaintiff was good or bad; if, by reason of the loss of the slaves, the breaches in the inclosure could not be repaired, or the plaintiff was unable to guard his field, as was his custom, was an inquiry for the jury; and in making up their verdict, they must have considered the facts and circumstances connected with this branch of the case.

The same remarks apply to the cord-wood. Had the plaintiff not been deprived of his hands, he might have removed, sold, or in some other manner secured, the wood from being floated off by the flood. In regard to the corn and the wood, if the damage was a consequence, which necessarily followed the loss of the hands, the plaintiffs in error were liable. The instructions of the court were general and correct. 5 Phil. Ev. 188, 189; Barnum *v.* Vanduson, 16 Conn. 200; Carrington *v.* Tay-

lor, 11 East, 571; 2 Greenleaf, Co. sect. 253, 254, 268 and 270, 272, 635 *a.*

The trespass was of an aggavated nature; notwithstanding the mitigating facts set up by the defendants, it was lawless and wholly inexcusable. It was a resort to physical force in defiance of law, and under such circumstances as to endanger life·and property. Such a procedure should be reprehended by every good citizen. It gives a high claim to the injured party for exemplary damages. We think there was no error in the proceedings, consequently, the judgment of the District Court is affirmed with costs.

## *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Northern District of Mississippi, and was argued by counsel. On consideration whereof, it is now·here ordered and adjudged by this court, that the judgment of the said District Court in this cause be, and the same. is hereby, affirmed, with costs and damages, at the rate of six per centum per annum.