THE WESTERN NEWS COMPANY v. GEORGE O. WILMARTH.

1. ATTACHMENT, *Maliciously Obtained; Action.* An action may be maintained against a corporation to recover damages for wrongfully, maliciously and without just or probable cause obtaining and levying an order of attachment upon personal property.

2. ———— *Evidence; Exemplary Damages.* Where it is alleged in a petition brought to recover damages therefor, that an order of attachment was wrongfully, maliciously and without just or probable cause sued out; that a stock of goods was levied thereon and withheld from the owner for about two months, and that thereby his business was completely broken up, it is not error on the part of the court trying the case without a jury, to receive evidence showing the value of the stock on hand at the time of the attachment; that the owner was doing a business of from $6,000 to $7,000 per annum, with a net profit of $1,500 to $1,600 a year, and that on account of the attachment proceedings his business was broken up, as in such a case vindictive or exemplary damages are allowable.

*Error from Shawnee District Court.*

ACTION by *George O. Wilmarth* against *The Western News Company,* a corporation duly organized under the laws of the state of Illinois, brought December 14, 1880, to recover damages for the wrongful and malicious issuance and levy of an order of attachment. Thereafter the defendant demurred to the petition, upon the ground that it did not state facts sufficient to constitute a cause of action against the defendant and in favor of the plaintiff. At the April Term of the court for 1881, and on May 21st, the demurrer was overruled, the defendant excepting. On June 4, 1883, the cause came on for trial before the court, a jury being waived. The court made the following findings of fact:

"1. That the writ of attachment in the case of The Western News Company v. George O. Wilmarth, before Justice Brier, and under which the property of the defendant Wilmarth was attached, was wrongfully issued.

"2. That said writ of attachment was sued out without any reasonable or probable cause therefor.

"3. That said writ of attachment was not sued out with malicious motives.

"4. The attachments in the cases of John Foley v. George O. Wilmarth, James Douglas v. George O. Wilmarth, Kate Douglas v. George O. Wilmarth, and The Western News Company v. George O. Wilmarth, were under the direction of Frank Patrick, who was then acting as the attorney for each of the plaintiffs in the above-entitled actions, levied upon the property of George O. Wilmarth, simultaneously, and for the purpose of an equal and mutual advantage of the plaintiffs.

"5. I further find that all the suits above named were, upon a change of venue, transferred from Justice Brier to Justice Reed, and from Justice Reed to Justice Hazen; that before such transfers were made, a motion to discharge the attachment in the case of John Foley v. George O. Wilmarth had been made by the defendant, and overruled by Justice Brier, but after the said transfer of said cases to Justice Hazen, motions were made to discharge the attachments in each of said cases, except the case of John Foley v. George O. Wilmarth, in which last-named case the motion was overruled, for the reason that Justice Hazen held that the action of Justice Brier in refusing to discharge the attachment in the Foley case was *res adjudicata,* and could not be reviewed or disturbed by him.

"6. I further find that the plaintiff Wilmarth sustained injury and damages by reason of the attachment of the defendant.

"7. That the damages sustained by the plaintiff, by reason of the attachment of this defendant, were four hundred dollars.

"8. That the stock and fixtures were not removed from Wilmarth's store building until after this dissolution of the attachments.

"9. I further find that the value of the goods plaintiff attached was one thousand dollars, and that they were sold by the constable for the sum of four hundred dollars."

Thereon the court gave judgment in favor of the plaintiff for the sum of $400, together with all costs. The defendant filed a motion for a new trial, which was overruled. The defendant excepted, and brings the case here.

*Frank Patrick,* for plaintiff in error.

*Case & Moss,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The petition alleged, *inter alia*, that the Western News Company — a corporation organized under the laws of the state of Illinois — commenced on September 17, 1880, an action against George O. Wilmarth for the recovery of money; that on the day of the commencement of the action, said corporation wrongfully, maliciously and without just or probable cause therefor, obtained an order of attachment in that action against the property of Wilmarth, and thereafter entered the store of Wilmarth, in the city of Topeka, and attached and took possession of all his goods, wares and merchandise; that on November 10, 1880, such proceedings were had that the order of attachment was duly discharged.

I. It is contended that the trial court erred in overruling the demurrer to the petition, for the reason that "corporations are not liable for torts where the ground of legal responsibility is evil motive." The law is otherwise.

"Corporations are responsible for the wrongs committed or authorized by them, under substantially the same rules which govern the responsibility of natural persons. It was formerly supposed that those torts which involved the element of evil intent, such as batteries, libels and the like, could not be committed by corporations, inasmuch as the state in granting rights for lawful purposes had conferred no power to commit unlawful acts, and such torts committed by corporate agents must consequently be *ultra vires*, and the individual wrongs of the agents themselves; but this idea no longer obtains." (Cooley on Torts, 119; 2 Addison on Torts, § 1304; 2 Wait's Actions and Defenses, 337; *Vance v. Railway Co.*, 3 Vroom, 334; *Goodspeed v. Bank*, 22 Conn. 530.)

The rule is now well settled, that, while keeping within the apparent scope of corporate powers, corporations have a general capacity to render themselves liable for torts, except for those where the tort consists in the breach of some duty which from its nature could not be imposed upon or discharged by a corporation.

II. It is next contended that the court below erred in ad-

mitting the testimony of Wilmarth as to injury to his business credit and loss of probable profits. The evidence objected to tended to show that, at the time of the service of the order of attachment, Wilmarth was engaged in the book and stationery business in the city of Topeka, where he had been so engaged for several years; that he had a stock on hand worth about $1,200, and fixtures of the value of $400; that he was doing a business from $6,000 to $7,000 per annum, with a net profit of $1,500 to $1,600 a year; that the property of Wilmarth was held under the order of attachment until November 10, 1880, the date the attachment was discharged, and that on account of the attachment proceedings his business was broken up. On the one hand it is asserted that the loss of probable profits and business credit are too speculative and remote to be considered in the assessment of damages. On the other hand it is claimed that loss of credit and probable profits afford a legitimate ground of recovery where the writ of attachment is wrongfully sued out. As the case comes to us, it is unnecessary to pass upon this question, so elaborately discussed by the counsel of the parties in their briefs. If an attachment is sued out willfully and maliciously, under all the authorities the injured party is entitled to recover damages for his loss and trouble, not only compensatory but exemplary. (*Wiley v. Keokuk*, 6 Kas. 94; *Hoge v. Norton*, 22 id. 374; *Winstead v. Hulme*, 32 id. 568; *Dow v. Julien*, 32 id. 576.)

There is nothing in the record showing that the district court included in the judgment any damages for injury to business credit or loss of probable profits. Upon this point, the findings of the court are: "That the plaintiff Wilmarth sustained injury and damages by reason of the attachment of defendant; and that the damages sustained by the plaintiff, by reason of the attachment of defendant, were $400." It further appears that at the time the goods were attached their value was $1,000, and that soon after the attachment was dissolved they were disposed of at public sale for the sum of $400 only. Of course Wilmarth was entitled to recover damages for injuries to his stock of goods by its depreciation in value while

under the control of the attaching officer. If counsel had desired to present the question whether damages for loss of credit or probable profits were embraced in the judgment, a request for a finding thereon should have been made. If it be suggested that the evidence objected to was introduced to establish damages for loss of credit and probable profits, it is a sufficient answer to say that this by no means follows. As exemplary damages are recoverable for the wrongful and malicious suing out of an attachment, a wide latitude is permitted in the introduction of the evidence in this class of cases. Such evidence may tend to show the malice, oppression or improper motives of the party obtaining the writ, and the evidence may go to the court or to the jury for consideration.

III. It is further contended, that the district court erred in permitting the plaintiff to introduce evidence tending to show the condition of the goods and the sale thereof upon execution after the discharge of the attachment. This evidence was received, we suppose, to show the injury to the goods during the time they were held under the attachment proceedings, and also as tending to prove their depreciation. It appears from the evidence that an execution was levied upon all the stock very shortly after the attachment was dissolved, and before any return of it was made to Wilmarth; therefore the condition of the stock at the time of the levy of the execution was pertinent, and the price that the goods sold for at public sale some evidence of their value at the time. All this tended to show the actual value of the goods at the time of the dissolution of the attachment, and their depreciation in value while detained from Wilmarth under the attachment proceedings.

It appears satisfactorily to us that the set-off of $36, pleaded and proved by the corporation, has been received by the corporation through its attorney; therefore it is not entitled to have this amount deducted from the damages allowed.

The judgment of the district court will be affirmed.

All the Justices concurring.