A. ENLOW V. MILEY HAWKINS.

No. 14,201.    (81 Pac. 189.)

SYLLABUS BY THE COURT.

1. DAMAGES—*Tortious Conduct.* One who commits a tortious act is liable for the injury and loss that are the natural and probable result of his wrongful act.

2. —— *Liability for Direct and Immediate Consequences.* Where shocked corn is purchased to be fed to a herd of cattle, and it is subsequently wrongfully destroyed by the vendor at a time when feed of that character cannot be obtained in that section of the country, the wrong-doer is liable, not only for the property destroyed, but also for the direct and immediate consequences of the wrongful destruction of the corn.

3. EVIDENCE—*Expert Testimony.* It appearing that those accustomed to feeding and handling cattle can estimate with reasonable certainty the injury and shrinkage in weight sustained by cattle on account of changing the feed given them from the shocked corn to straw, cane, and like fodder, such testimony was properly considered in measuring the damages caused by the wrong-doer.

Error from Edwards district court; CHARLES E. LOBDELL, judge. Opinion filed June 10, 1905. Affirmed.

*W. N. Beezley,* and *D. A. Banta,* for plaintiff in error.

*F. Dumont Smith,* and *A. C. Dyer,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Miley Hawkins to recover from A. Enlow $3000 as damages for the malicious destruction of corn. In his petition Hawkins alleged that in September, 1902, he purchased seventy-five acres of standing corn from Enlow and another, to be cut and shocked upon the land where it was grown, there to remain as late as April 15, 1903. It was purchased by Hawkins for the purpose of winter-feeding 500 head of cattle that he

owned, and Enlow knew the purpose for which the purchase was made. Hawkins cut and shocked the corn, which was of the value of $1000, and it was standing on the land on March 3, 1903, when Enlow wilfully and maliciously tore down the shocks, threw them into the road, and totally destroyed them, thus occasioning a loss of $1000. It was further alleged that by reason of the destruction of the corn the plaintiff was unable to continue the feeding of his cattle, and as a result thereof, and of the change of feed, the cattle shrank greatly in weight, and were depreciated in value, by which he sustained a loss of $2000. Enlow admitted the purchase of the corn but denied the other averments, especially that there was an agreement that the corn might stand on the land for the period stated by Hawkins, and he also alleged that Hawkins had caused him loss by the manner in which he had used the land on which the corn was shocked. At the trial the jury awarded Hawkins damages in the sum of $400, and, in answer to special questions, stated that $165 of that amount was damages for the corn destroyed, and that $235 was allowed as shrinkage of the cattle.

The record does not show that it contains all of the evidence received or the instructions given by the court, and hence some of the questions discussed are not open for consideration. Sufficient is included, however, to raise the question whether the shrinkage and loss of growth in the cattle, resulting from the wrongful destruction of the feed purchased for them, are proximate and furnish a basis for recovery. According to the averments of the petition the basis of the action was more than a violation of contract—it was a malicious tort; and in such actions the wrongdoer is liable for the direct and immediate consequences of his wrongful act.

It appears that the shocked corn was of good quality, and that such feed could not be obtained in that

region of the country in that season of the year. Straw and other fodder were found and substituted for the shocked corn that was destroyed, but the cattle did not relish the change of feed, and the result was a stunting of the growth and a shrinkage of weight. Witnesses who were in the cattle business stated that the shrinkage and loss occasioned by such a change of feed could be fairly well measured by those accustomed to feeding cattle, and they undertook to state the extent of the injury and loss to the Hawkins cattle. The testimony was competent, and the damages sustained by the wrong of Enlow were recoverable. The loss was the direct and immediate consequence of his tortious act, and one that could have been reasonably anticipated. The case of *Hoge v. Norton,* 22 Kan. 374, has characteristics of its own, but the governing principle there applies here. In that case, under an attachment wrongfully obtained, cattle were taken from a range where they had been kept and placed in charge of a herder on another range where the feed and water were not good, and because of the change they failed to make the growth and increase in weight that cattle would ordinarily make if left upon a range to which they were wonted, free from worry, with good feed and water such as they had on the range where they had been previously kept; and the holding was that the loss sustained was the direct result of the wrongdoing, and that it was so certain in character as to be susceptible of measurement. Mr. Justice Brewer, who delivered the opinion, remarked:

"Of course, absolute certainty is not attainable, as in casting up the figures of an account; but nevertheless there are certain laws of feeding and growth, well understood among cattlemen, and whose results work out with sufficient certainty for business calculations and judicial investigations. The raising of cattle for market has been an extensive and ofttimes profitable business in this state; and it would be strange if one could wrongfully take from the owner a herd of cattle,

remove them to a poorer range, feed them on inferior food, and so treat them that during the growing season they do not grow at all, and then at its end return them, saying, as did the unfaithful servant in the parable, who returned the single talent without increase, 'Lo! there thou hast that is thine,' and still be under no liability to respond in damages to such owner. We do not think the law so deficient. It seems clear that the owner is damaged, that the damages may be determined to a reasonable certainty, and that the wrong-doer is bound to make good the damages." (Page 380.)

There the cattle were wrongfully taken from their accustomed feed, and here the accustomed feed was wrongfully taken from the cattle. In that case there was only a retarding of the growth of the cattle, while in the present case there was, in addition to a checking of growth, an actual shrinkage in weight. In either case the loss was the natural consequence of the tortious act, and men who have experience in raising and feeding cattle can determine the resulting loss with reasonable certainty.

As tending to sustain the rule of the Hoge-Norton case, see *The Western News Co. v. Wilmarth*, 33 Kan. 510, 6 Pac. 786; *Heatwole v. Gorrell*, 35 id. 692, 12 Pac. 135; *Brown v. Hadley*, 43 id. 267, 23 Pac. 492; *Town Co. v. Lincoln*, 56 id. 145, 42 Pac. 706; *Gas Co. v. Glass Co.*, 56 id. 614, 44 Pac. 621; *States v. Durkin*, 65 id. 101, 68 Pac. 1091; *McAfee et al. v. Crofford*, 54 U. S. 447, 14 L. Ed. 217; *Chapman et al. v. Kirby*, 49 Ill. 211; *Mann v. Taylor*, 78 Iowa, 355, 43 N. W. 220; *Hawthorne v. Siegel*, 88 Cal. 159, 25 Pac. 1114, 22 Am St. Rep. 291; *Derry v. Flitner*, 118 Mass. 131; *Miller v. The St. L. I. M. & S. Ry. Co.*, 90 Mo. 389, 2 S. W. 439; 13 Cyc. 28; 8 A. & E. Encycl. of L. 598.

If feed of the same kind could have been purchased in that section of the country a different measure of damages would have been applicable. It was the duty of Hawkins to arrest or reduce the loss consequent on the wrong of Enlow, and the testimony tends to show

that he procured the best feed that could be had in that region.

The extent of the loss, as well as some other disputed questions, cannot be considered, since it does not appear that all the testimony upon which the findings and verdict were based is before the court.

We find nothing substantial in the objections to the rulings on evidence or to the instructions of the court. The judgment is therefore affirmed.

All the Justices concurring.