No. 18,559.

H. C. PARISH, *Appellee,* v. THE VAN ARSDALE-OSBORNE BROKERAGE COMPANY et al., *Appellants.*

SYLLABUS BY THE COURT.

1. VALID ATTACHMENT—*Manual Seizure of Personal Property Not Necessary.* It is not necessary to a valid attachment that the officer shall make a manual seizure of personal property, but it is deemed sufficient if he assumes control and exercises dominion over it.

2. SAME—*Facts Show Valid Levy of Attachment.* An owner of property advertised that it would be sold at public auction at a certain time, and on the day of sale the sheriff appeared at the place of sale, where the property was assembled, with an order of attachment sued out by the plaintiff. After stating his purpose, and under an arrangement with the sheriff, the defendant owner gave a forthcoming bond, in which it was recited that the property had been seized under the order of attachment and was bound by it, and thereupon the property was released and the sale proceeded. The attachment was subsequently vacated on the ground that the defendant was not indebted to the plaintiff, and in an action on the attachment bond it is held that as between the plaintiff and the defendant there was a valid levy of the attachment.

3. SAME—*Elements of Damages—Wrongful Attachment.* The expenses necessarily incurred in procuring the dissolution of an order of attachment wrongfully issued and a release of the property unlawfully seized, including attorneys' fees and the cost of depositions, may be recovered by the owner on the attachment bond.

4. SAME. The depreciation in the value of property and of the prices received which proximately resulted from the unlawful attachment of the property at the sale is an element of damages which may be recovered by the owner.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed May 9, 1914. Affirmed.

*T. A. Noftzger, George Gardner,* both of Wichita, and *S. C. Holmes,* of Yates Center, for the appellants.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellee.

Parish v. Brokerage Co.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action upon an attachment bond to recover the damages sustained by reason of an unlawful attachment. The appellant The Van Arsdale-Osborne Brokerage Company caused an attachment to be issued against the property of the appellee, H. C. Parish, having previously given an attachment bond in the sum of $200, signed by C. G. Ricker as surety. The appellee had previously advertised a public sale of his personal property at his residence, and on the day of the sale, and when a part of those who attended the sale had assembled, the sheriff appeared with the order of attachment, which it is alleged was levied upon appellee's property. Instead of taking manual possession of the property or removing it from appellee's place the sheriff arranged with appellee that the following bond should be given:

"*State of Kansas, Woodson County, ss:*

"Whereas, Van Arsdale-Osborne Bro. Co., has commenced a civil action against H. C. Parish in the District Court within and for said county and state; and whereas, an order of attachment has been issued in said action, and the property of the said H. C. Parish has been attached, and is now bound therefor, which property the sheriff of said county now returns to the said H. C. Parish defendant, in said action. Now, we, the undersigned, residents of said county, bind ourselves, to said plaintiff, in the sum of two hundred and no-100 dollars (being double the appraised value of said property) that said property or its appraised value in money shall be forthcoming to answer the judgment of said court in said action."

This bond was signed by the appellee and another, was approved by the sheriff, and the sale proceeded; but there is testimony to the effect that the attachment proceedings became known to persons who attended the sale and others who contemplated attending it, with the result that the property was sold for much

less than its value and what it would have sold for if the attachment proceedings had not been instituted. The trial resulted in a verdict in favor of appellee in the sum of $200, and special findings were made to the effect that the damages awarded consisted of $50 as attorneys' fees in the attachment proceeding, $5 for the taking of depositions in that proceeding, and $145 for other injuries sustained which arose from the wrongful attachment.

It is contended that there was no actual levy of the attachment and that consequently there can be no recourse upon the attachment bond for any damages that may have resulted from the action of the sheriff. The return of the sheriff, which included the forthcoming bond executed by the appellee and accepted by the sheriff, and which was set forth in appellee's petition and not denied by appellant, recited that appellee's property was seized and held under the order of attachment, and that the property was returned to appellee when the bond was given. It is not necessary to a valid levy that the officer should even touch the property or make a manual seizure of it. It is enough if he assumes control of it and exercises dominion over it. (*Throop v. Maiden,* 52 Kan. 258, 34 Pac. 801; 4 Cyc. 591.) The sheriff, who was acting at the instance of the appellant, in effect, says that he assumed control over the property prior to the execution of the bond by appellee. The recitals show that dominion over the property was exercised by the officer acting in behalf of the attaching plaintiff, and it was acknowledged by the owner of the property. Other questions might arise if the rights of a *bona fide* purchaser or a subsequent attaching creditor were involved, but the only parties to this controversy are the appellant, who caused the attachment to be issued, and the appellee, who owned the attached property, and as between them there is little room for controversy. There was no verified denial of the facts relating to the attachment,

which were stated in the return of the sheriff and in the bond, which were made a part of appellee's petition; neither does it appear from the record that the question of the sufficiency of the bond was raised in the trial court. It can not be held, therefore, that the order of attachment was not levied.

There is complaint of the allowance of attorneys' fees and the item for taking depositions as damages. The expense incurred in defending against an attachment wrongfully sued out may be allowed as damages in an action brought upon the attachment bond. In *Sanford v. Willetts*, 29 Kan. 647, it was held that the expense incurred and the value of the time expended in obtaining a release of property wrongfully attached constitute actual damages which are recoverable. In *Tyler v. Safford*, 31 Kan. 608, 3 Pac. 333, it was ruled that attorneys' fees necessarily paid to free property from an unlawful attachment might be allowed, that the employment of nonresident attorneys was permissible, and that their traveling expenses between their home and the place of trial was a proper element of damages. It is argued, however, that the $50 item for attorneys' fees as well as the $5 item paid to obtain a deposition should not be allowed because they were not incurred in obtaining a dissolution of the order of attachment, but were rather used upon the trial of the main case in which the order was issued. No preliminary motion was made to dissolve the attachment, but the question of whether there was a debt which was justly due was tested on the final trial, and it was then determined that there was no indebtedness, and consequently an order was made vacating and setting aside the attachment. To obtain the attachment the appellant made an affidavit that it had a claim against the appellee for a certain amount which was justly due. In order to establish that there was no basis for this claim and that the appellee was not

indebted to the appellant in any amount a trial of the
merits was necessary. There might have been a pre-
liminary motion to dissolve the attachment on the
ground that the averments of the affidavit were not
true and that there was no indebtedness, but the same
proof would have been necessary on that motion as on
the final trial that was had. Just such a trial as was
had was necessary to get rid of the illegal attach-
ment and to free the property from the apparent lien,
and as the fees in question were expended in accom-
plishing this purpose they were proper elements of
damages. As was said in *Schwartzberg v. Bank*, 84
Kan. 581, 115 Pac. 110:

"The decision of the court in the attachment action,
finding in favor of the plaintiff herein and dissolving
the attachment, is conclusive proof that the attachment
was unlawful. (*Hoge v. Norton*, 22 Kan. 374.) The
plaintiff then had the right to proceed further and
prove the nature of the wrongful acts and the extent of
his damages therefrom." (p. 585.)

It is further contended that the allowances made be-
cause of depreciation in the price of the animals and
articles disposed of at the sale which was interrupted
by the attachment are not proper elements of damage.
It appears that appellee had advertised a sale of his
personal property. About the time for the sale to
begin, and when a large number of persons had as-
sembled to attend the sale, the sheriff appeared with
his attachment order. A bond was taken, as has been
stated, under section 200 of the civil code, providing
that the property or its value should be forthcoming to
answer the judgment in the action. According to the
testimony, the sale was delayed for a few hours, and
the effect of the attachment became a subject of dis-
cussion among the bidders present, and there was a
fear that something was wrong about the sale. The
news of the attachment deterred at least one man from
going to the sale who desired to purchase some of the

property that was offered at the sale.  Considerable testimony was offered tending to show that the property, with the exception of one or two items, brought much less than its value.  Of course, property does not always sell for its value at an auction sale, but the testimony is that there was an exceptional slump at this sale, and that horses, cows, hogs, hay, feed and implements worth about $1400 were sold for $800.  It is contended that there was evidence tending to show a depreciation of $600, and there appears to be enough to justify the award of $145 made by the jury.  The bond upon which the action was brought stipulated that appellee should be paid "all damages which he may sustain by reason of said attachment if it be wrongfully obtained."  The attachment was wrongfully obtained, and if the depreciation was the immediate result of the wrongful attachment the appellee was entitled to recover it.  Here there was no loss of property nor any special injury to the property itself, but the contention is that the unlawful attachment not only interfered with the sale but threw doubt and discredit on it, so as to cause depreciation and loss.  It is well settled that injury to the credit, reputation and business of a defendant in attachment is too remote and speculative to be recovered.  (*Doty v. Bank,* 82 Kan. 406, 108 Pac. 804.)  Here it is not an injury to the credit of the owner that is involved, but it is an injury which affected the property itself.  It is not difficult to understand that the seizure of the property by attachment might raise a doubt in the minds of the purchasers as to the risk of buying, and that it would operate to depress the prices paid.  If the property had been held by the sheriff for several days instead of several minutes the depreciation in the value of the property during the time it was held could have been recovered, and it would seem that the depreciation resulting from the seizure and holding of the animals and articles even for

a short time can be regarded as the direct and proximate result of the wrongful attachment. It is not unreasonable to infer that the property could have been sold for its value if it had not been attached, as the testimony is that under normal conditions property is usually sold for its value at such sales in that community. As the loss appears to have resulted directly and proximately from the illegal seizure, it is, we think, a proper element of damages. (*Nixon v. First State Bank,* [Tex. Civ. App. 1910], 127 S. W. 882; 4 Cyc. 880.) The court is inclined to take a liberal view of the damages recoverable where property is wrongfully seized, and to allow for any depreciation or loss which is susceptible of measurement and is the immediate result of a wrongful attachment. In an attachment case it was held that a party whose property was wrongfully seized may recover not only the loss sustained but also the gains prevented by the wrongful act. A herd of cattle wrongfully attached were placed in an inferior pasture and were not given proper feed and care, with the result that they did not make the ordinary gains in weight and value, and it was held that the gains so prevented were open to measurement and might be recovered. (*Hoge v. Norton,* 22 Kan. 374.) Other cases in which the same liberal view was taken in regard to the allowances of damages are: *Sanford v. Willetts,* 29 Kan. 647; *Brown v. Hadley,* 43 Kan. 267, 23 Pac. 492; *Enlow v. Hawkins,* 71 Kan. 633, 81 Pac. 189, and *Gas Co. v. Bailey,* 77 Kan. 296, 94 Pac. 258.

There were some objections to rulings made during the trial, but in none of them do we find any substantial error. The judgment of the district court will be affirmed.