No. 25,854.

OUTCAULT ADVERTISING COMPANY, *Appellant*, v. THE CITIZENS NATIONAL BANK, of Emporia, *Appellee.*

SYLLABUS BY THE COURT.

DAMAGES—*Breach of Contract—Anticipated Profits.* Prospective profits which would have been realized had a contract for the purchase of manufactured copyrighted advertising supplies been performed, may be allowed, providing they are fairly within the contemplation of the parties and are susceptible of being ascertained with reasonable certainty.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed April 11, 1925. Reversed.

*William S. Kretsinger,* of Emporia, for the appellant.

*O. T. Atherton,* of Emporia, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for damages for breach of a contract to purchase advertising supplies. Trial was to the court. Plaintiff was awarded judgment for nominal damages only, and appeals.

The plaintiff manufactures, assembles and sells to banks a system of copyrighted advertising supplies and materials. On May 12, 1920, it entered into a contract with the defendant which reads:

"May 12, 1920.

"To Outcault Advertising Co.,
        506 So. Dearborn St., Chicago, Ill.

"Ship us, at our expense, your bank 'ad' service, which covers a period of five years, beginning Dec. 1, 1920. This service to consist of (supplies enumerated). . . . . We agree to pay you $410.80 per year for five years; payable net cash, as follows: $410.80 on January 15th of each year during the term of this contract. Failure to make any payments within 30 days after due renders full amount due. The last three years of this contract may be terminated by us, provided that we so notify the Outcault Advertising Co., Chicago, Illinois, in writing, by registered letter, on or before February 1st, 1922. Time is of the essence of this contract. We to have the exclusive right to use the above bank service in our city only, and we agree not to use or permit the use of any part thereof after this contract expires. Cuts, type and all 'ad' matter not destroyed are subject to recall by you. Exclusive right having been given, this contract cannot be canceled except on the date and in the manner herein provided. All terms and conditions are stated herein. . . . "

Under this contract plaintiff furnished supplies to the defendant

for the years 1920 and 1921. The defendant, not having exercised its option to cancel the contract, the plaintiff, on March 27, 1922, wrote the defendant:

"We have completed your Christmas club supplies. Before completing imprinting the supplies for next year's club we wish to know if you desire any changes in the imprinting on the letterheads, pass books or envelopes. . . It is necessary to have this information at once. In the event we do not hear from you by April 10th we shall assume that you wish your supplies imprinted exactly as last year and will complete and ship accordingly."

The defendant, on March 28, replied:

"We have your letter of March 27 regarding supplies for 1923 Xmas club. In reply to same will say that we do not wish to subscribe for the supplies for 1923. Our contract was for two years, 1920 and '21, and we do not care for your service further."

Plaintiff shipped the supplies for 1922 to the defendant, but they were refused.

Plaintiff's testimony consisted of the deposition of Gilbert Hart, vice president and general manager of the plaintiff. To analyze it in detail is not necessary. A brief statement will suffice. It showed the witness had been connected with the business since 1908, and manager for the last ten years; that he had complete supervision of the company's business, including the purchase of supplies, raw material, the manufacture or preparation and shipment of the goods; that he was familiar with the cost; that the defendant paid the first two yearly installments of $410.80 for each year; that the defendant was accorded the exclusive right to the copyrighted matter, method of advertising and supplies; that the plaintiff, having received no notice of cancellation of the contract, treated it as being in full force for the full five years, and bought and contracted materials to fill it; that witness knew the reasonable cost of the various supplies and the damage sustained by the company. He then gave in detail the cost of the various items necessary to a complete fulfillment of the contract, which totaled $369.72; that the contract price for the three years was $1,232.40; and that the difference between the cost and the contract price was $862.68.

The defendant introduced evidence, but made no attempt to show that plaintiff's figures were not correct. The court found that the defendant had breached its contract; that the plaintiff was entitled to judgment, but could recover nominal damages only.

The plaintiff contends that upon the breach and repudiation of the contract by the defendant it had an immediate cause of action, and that the measure of damages was the profit which would have accrued to the plaintiff had the defendant performed on its part, or the difference between what it would have cost the plaintiff to carry out the contract for the remaining three years and the price which the defendant had agreed to pay for such performance.

The defendant contends that the proper measure of damages was the difference between the contract price and the market price at the time of the breach. There is a rule that the measure of damages for breach of a contract to purchase or sell personal property is the difference between the contract price and the market value; this upon the principle that there is a ready market for the goods. When there is not a ready market for the goods the reason for the rule ceases and the rule can have no application. If, as in this case, a manufacturer has incurred a portion of the expense of manufacturing the goods to be delivered, he should be permitted to recover the contract price less the cost of manufacture, especially if the article can not be readily sold on the open market. (6 Page on Contracts [2d ed.], 5680, § 3228.) There was no open, ready market for plaintiff's goods, and under the special circumstances in contemplation of both parties, the rule invoked by the defendant does not apply.

In *Dynamo & Engine Co. v. Cement Co.*, 221 Pa. St. 160, it was held that the measure of damages for cancellation, after the work is partially done, of an order for a machine to be constructed in such form that there is no market in which it can be readily sold, is, where the material is used for other purposes, the difference between the actual cost of manufacturing and delivering it and the contract price.

In *Gardner v. Deeds & Hirsig*, 116 Tenn. 128, it was held:

"The measure of damages for the breach of the contract was the profit complainant would have made if he had been permitted to complete the contract; that is, the contract price of the goods less the cost of manufacture."

The question of damages is discussed in an exhaustive note in 4 L. R. A., n. s., 740, where it is said:

"In considering the question what damages may be recovered by the vendor in case of the breach by the vendee of a contract for the purchase and sale of articles to be manufactured, it must be borne in mind that the aim of the law is to place the vendor in the same position he would have occupied if the

vendee had performed his contract. If· this object is to be attained, it is evident that the vendor must be permitted to recover the profits which he would have made if there had been no breach of the contract. His right to such profits is generally admitted." (See, also, *Cameron v. White,* 74 Wis. 425; Case note 18 L. R. A., n. s., 613.)

It has been held that anticipated profits may be allowed as damages upon the breach of a contract where the business undertaken is not new or untried and has been established to such an extent that a safe basis can be found upon which to estimate such profits with reasonable certainty. (*Gas Co. v. Bailey,* 77 Kan. 296, 94 Pac. 258. See, also, *Hoge v. Norton,* 22 Kan. 374; *Geiss v. Hardware Co.,* 37 Kan. 130, 14 Pac. 463; *Brown v. Hadley,* ·43 Kan. 267, 23 Pac. 492; *Town Co. v. Lincoln,* 56 Kan. 145, 42 Pac. 706; *Gas Co. v. Glass Co.,* 56 Kan. 614, 44 Pac. 621; *Enlow v. Hawkins,* 71 Kan. 633, 81 Pac. 189; *McConnell v. Corona City Water Co.,* 149 Cal. 60; *Hinckley v. Pittsburg Steel Co.,* 121 U. S. 264; *Western Union Tel. Co. v. Hall,* 124 U. S. 444, 454, 456; *Howard v. Stillwell & Bierce Mfg. Co.,* 139 U. S. 199; *Cincinnati Gas Co. v. Western Siemens Co.,* 152 U. S. 200; *Anvil Mining Co. v. Humble,* 153 U. S. 540; *Guerini Stone Co. v. Carlin,* 240 U. S. 264; *In re Duquesne Incandescent Light Co.,* 176 Fed. 785.)

The defendant contends that the plaintiff made inconsistent elections; that it first elected to treat the contract as subsisting, and in keeping with that election shipped the supplies for the year 1922 to the defendant; that the goods were not accepted by the bank, and the plaintiff, under its election, had a cause of action for the price of the goods, and that the filing of the action for damages was so inconsistent as to preclude recovery. The contention is without substantial merit. There was no inconsistency in the plaintiff's action which would bar recovery.

In *Gas Co. v. Glass Co.,* supra, it was said in the opinion:

"It is well settled in this state that damages based on prospective profits which would have been realized had the contract been performed may be allowed, providing they are fairly within the contemplation of the parties, are the direct and natural consequence of the breach of the contract, and are susceptible of being ascertained with reasonable certainty." (p. 622.)

The plaintiff, under the evidence, was entitled to a judgment for the damages shown. The judgment is reversed and the cause remanded for further proceedings.