No. 38,567

J. J. HARRINGTON, JR., N. C. CLAUSONTHUE and SELIM N. TIDEMAN, JR., partners, doing business under the firm name and style of J. J. HARRINGTON & Co., *Appellees*, v. THE PROPULSION ENGINE CORPORATION, a corporation, HERMAN B. MEYER and ROBERT F. MEYER, *Appellants.*

(241 P. 2d 733)

Opinion filed March 8, 1952.

*J. O. Emerson*, of Kansas City, argued the cause, and *Edw. M. Boddington* and *Edward M. Boddington, Jr.*, both of Kansas City, *Eugene A. Weinberg*, of Chicago, Ill., and *Prosper Reiter, Jr.*, of San Jose, Cal., were with him on the briefs for the appellants.

*Leonard O. Thomas*, of Kansas City, argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder* and *Lee E. Weeks*, all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover a broker's commission under a written contract. Plaintiffs prevailed and defendants have appealed. Plaintiffs have cross-appealed from a ruling denying their recovery of the full amount which they sought to recover.

In their petition plaintiffs alleged their status as partners engaged in the sale of industrial properties and their post-office address in Chicago, Ill.; that defendant Propulsion Engine Corporation, hereafter referred to as the Engine Corporation, was organized under the laws of Missouri and engaged in the manufacturing business in Kansas and that the individual defendants were nonresidents of Kansas; that on March 22, 1950, the parties entered into a contract, a copy of which was attached and is later mentioned; that pursuant to the contract, and while it was in full force plaintiffs introduced to the defendants, representatives of Food Machinery and Chemical Corporation, hereafter referred to as Chemical Corporation, who were willing to negotiate for the purchase of defendants' properties, did negotiate and did purchase all or substantially all of the stock or all of the assets of the Engine Corporation and paid or agreed to pay a sum in excess of $437,-105.21, the exact amount being unknown to plaintiffs, the payment having been made or to be made pursuant to a contract, a copy of which had not been furnished plaintiffs and was not in their possession; that by reason of the facts set forth plaintiffs were entitled to a portion of the consideration, to an accounting and a judgment for the sum of $30,597.36, together with interest, and they prayed judgment against the defendants for that sum and interest, for costs and such other relief as might be just or equitable.

The contract above mentioned was evidenced by a letter addressed to plaintiffs and signed by the Engine Corporation by its General Manager-President, by Herman B. Meyer, "Shareholder and Owner of Building" and by Robert F. Meyer, "Shareholder" and bore an acceptance of its terms and conditions signed by plaintiffs. Under the terms of the letter plaintiffs were given the exclusive right to sell the Engine Corporation under stipulated conditions. The business could be sold either by sale of all the capital shares or by a sale of all the assets, and it was the desire to sell capital shares as distinguished from assets. The manner of sale, price, terms and conditions of sale remained in the sole discretion of the board of directors of the corporation, then followed this clause:

"Your said exclusive right and authority shall extend for a period of 60 days from date hereof, and shall continue thereafter until terminated by us by letter to you."

It was further provided that for plaintiffs' efforts in defendants' behalf, defendants agreed to pay a brokerage commission as follows:

a. Which included sale or merger of the entire business and also building and real estate.

b. "In the event of a sale of said business in either manner above stated but exclusive of land and building, at the rate of 7% of the gross purchase price paid by a party introduced by you."

c. Not presently material.

d. Provides for leasing of land and building.

The contract letter further provided:

"It is further understood and agreed that we shall not be liable to you in any form, manner or amount unless or until one of the transactions mentioned shall be actually made and actually consummated with or to a party introduced by you."

It was further provided that any commission due should be paid in cash at the time of consummation of the sale irrespective of whether or not any consideration was to be paid in installments, and other provisions not necessary to notice here.

The answer of defendants sets forth two defenses. The first is a general denial. In the second the defendants alleged (1) a certain letter written by plaintiffs; (2) a certain answering letter written by them to plaintiffs dated May 10, 1950, the two latter paragraphs of which read:

"We would certainly like to conclude some arrangements at your earliest convenience inasmuch as your contract expires in approximately two weeks.

"The writer plans to be out of town from the 24th of May until the 6th of June, and I would suggest that you accelerate all possible negotiations into the next two weeks' time."

and (3) that if the contract pleaded by plaintiffs was in force it was terminated May 24, 1950, and further that the Chemical Corporation was never introduced by plaintiffs to defendants as a prospective purchaser of the assets or stock of the Engine Corporation.

In their reply plaintiffs admitted the allegations of (1) and (2) of the second defense, denied that the contract was terminated and alleged at length facts and letters with reference to their introducing Chemical Corporation to defendants and to their participating in negotiations culminating in a sale of the capital stock of the Engine Corporation to the Chemical Corporation.

At the trial commencing June 26, 1951, at which a jury was waived, the plaintiffs offered a considerable amount of documentary evidence which will be referred to later, and oral testimony. The defendants' demurrer to this evidence was reserved for later decision. Thereafter the defendants offered documentary evidence and oral testimony in defense and the plaintiffs offered rebuttal testimony. The cause was argued and submitted to the trial court for decision. On June 28, 1951, it found that judgment should be entered for plaintiffs against defendants; that the total cash consideration for the sale (consummated June 24, 1950) amounted to a total of $297,105.21 and that plaintiffs were entitled to seven percent thereof, which amounted to $20,797.36, and also to seven percent of two percent of gross sales for the first year, which amounted to $3,675.28; that the total due plaintiffs amounted to $24,472.64 on which sum they were entitled to interest from June 24, 1950, at six percent, in the sum of $1,464.75; and that defendants' demurrer to the evidence should be overruled, and it rendered judgment conformably to the findings. In due time defendants filed their motion for a new trial, and that motion being later denied they perfected their appeal from the judgment, from the ruling on their demurrer to plaintiffs' evidence, and from the ruling on their motion for a new trial.

Appellants' specifications of error are that the trial court erred:

1. In overruling their demurrer to the evidence.

2. In overruling their motion for a new trial.

3. In allowing the cause to go to judgment when other brokers equally interested with plaintiffs and indispensable parties were not made parties.

4. In ruling on admission or exclusion of evidence.

5. In allowing interest where no interest was claimed from a specific date in the petition.

6. In its judgment which was contrary to and not sustained by any substantial evidence.

These will be discussed in order.

The substance of appellants' complaint that their demurrer to plaintiffs' evidence should have been sustained is fourfold and to the effect (1) that appellees failed to prove that they "introduced" the Machinery Corporation to the Engine Corporation as a buyer as required by the broker's contract of March 22, 1950; (2) that the above contract was terminated according to its terms on May 24,

1950, and a month before the sale to the Chemical Corporation was completed and hence appellees had no right to recover; (3) that there was no valid grounds to estop appellants from stating that appellees had not introduced the buyer; and (4) that the contract called for the sale of real estate, and there was no compliance with G. S. 1949, 67-1001, *et seq.*

As has been pointed out above, there was no ruling on the demurrer when first made. Counsel for appellants agreed that the ruling be postponed until the close of the evidence and the demurrer was then overruled. In their brief, appellants refer not only to evidence offered by appellees but by themselves.

Limits of space preclude any detailed review of the documentary and other evidence. Viewed favorably to the appellees, as it must be when attacked by demurrer, the evidence tended to establish the following: The Engine Corporation had its plant at Kansas City, Kan., and Robert Meyer was its general manager. The Chemical Corporation had its place of business at San Jose, Cal., and Carter was its vice-president and one of its active officers. This latter corporation had a subsidiary division, known as Bolen Division, at Port Washington, Wis., and Engelking was its manager. On December 5, 1949, Engelking wrote Meyer inquiring about some snow removing and leaf pulverizing equipment being developed by the Engine Corporation. Meyer answered, offering to manufacture units for Engelking at a fixed price basis. He also stated his company was considering a sale of its business and inquired if Engelking's company was interested. Several letters passed in none of which did Engelking express any interest in acquiring the Engine Corporation. Engelking visited the Kansas plant and thereafter wrote Meyer concerning patent protection on a certain engine. Under date of January 24, 1950, Meyer answered the patent question, stated their 1950 Mow-Masters with Grind-A-Leaf attachment would be available by the middle of February, and that his corporation would be pleased to go into any matter that you (Engelking) deem pertinent at anytime you feel you would like to consider our (Engine Corporation) proposition. Nothing further occurred in this connection. About March 1, 1950, Thomas A. Harrington visited Meyer in Kansas City and later Meyer prepared the contract letter of March 22, 1950, and sent it to his father Herman B. Meyer in Chicago, who brought the letter to appellees' office in Chicago where it was signed for the appellees. Shortly thereafter appellees had a letter from John D. Farnham &

Associates, of St. Paul, Minn., inquiring whether appellees had a contract to represent any lawn mower companies, and as a result of correspondence with Farnham and with Meyer, which will not be detailed, some efforts to bring representatives of the Chemical Corporation and of the Engine Corporation together resulted in appellants' letter of May 10, 1950, two paragraphs of which are quoted above in reviewing their answer. Thereafter arrangements were made for and a meeting was had at the Kansas City plant on May 17, attended by Carter, Engelking, Meyer and representatives of appellees, where a proposed contract was discussed in which there would be a purchase of the assets of the Engine Corporation (which included no real estate) for a base price, plus two percent of the gross sales for the succeeding three years. On May 23 the Chemical Corporation authorized the purchase on certain conditions. On June 1 Herman Meyer called at appellees' office in Chicago and discussed the sale and terms, at which time Meyer gave Harrington instructions as to how he wanted the sale completed. On June 18 and 19 Robert Meyer, Carter and Harrington conferred in Kansas City, on June 20 Engelking joined the conference, on June 21 Herman Meyer and counsel for the Chemical Corporation arrived, and a contract was then suggested and drawn. On June 22 a final conference, attended by all interested parties, including Harrington, was held and on the next day the final contract of sale was agreed upon, under which the Chemical Corporation purchased the common and preferred stock of the Engine Corporation for the sum of $240,692.04, subject to certain adjustments not now involved, and an amount equal to two percent of the net selling price of rotary lawn mowers and two-cycle engines made after June 1, 1950, for a period of three years. On July 7 Herrington wrote a letter, addressed to the three appellants offering to accept a commission less than called for by the letter of March 22, 1950, if paid under certain conditions noted and if not so paid, that the contract of March 22 should control. Robert Meyer acknowledged receipt, stated the Chemical Corporation did not recognize Harrington as a broker and that he had turned the letter over to his father so that a deal could be worked out with him. Under date of July 25, 1950, one Weinberg notified Harrington that Meyer had consulted him and based on his opinion his clients had asked him to advise that they denied liability.

We are aware that there was evidence from which a conclusion could be drawn favorable to the appellants' contentions, but when

tested by a demurrer, such a conclusion is not proper and evidence tending thereto will not be set forth.

1. Appellants argue that the evidence did not disclose that a transaction was consummated with a party introduced by appellees, but on the contrary showed that the Chemical Corporation had been negotiating with the Engine Corporation since the latter part of 1949; that such negotiations had not been broken off and that the contract of sale was the final result of those negotiations and appellees were in no sense responsible for the sale. We cannot agree. While it is true there had been some negotiations between Engelking and Robert Meyer, they had to do with the purchase of some of the products manufactured by Engine Corporation. Meyer did state they wished to sell the corporation but Engelking at no time negotiated for a purchase of either the assets or the capital stock of the Engine Corporation. Whatever those negotiations had been, nothing was being done to further them when the Engine Corporation and Meyer and Meyer made the contract of March 22, 1950, with the appellees. And when the appellees started efforts to bring the Chemical Corporation in as a prospective buyer nothing was said to appellees by appellants that there were any pending negotiations; on the contrary appellants accepted the efforts leading up to the various conferences, Thomas A. Harrington's work under the direction of Herman Meyer, and the work done at the subsequent conferences, all without any claim that appellees had not introduced a prospective purchaser. It may not be said as a matter of law that appellees did not introduce a prospective buyer who did not subsequently consummate a contract for purchase on terms satisfactory to appellants.

2. Appellants contend that the letter from the Engine Corporation to the appellees of May 10, 1950, terminated the contract, and that the contract having been terminated, appellees have no right of recovery under it. In support they cite *Fultz v. Wimer*, 34 Kan. 576, 9 Pac. 316. An examination of that case discloses a contract whereby real estate was listed with an agent for a definite term. After that term had expired the agent sought to complete a sale. In the course of the opinion it was said that it was doubtless true the agent was instrumental in enabling the owner to sell, but as they had contracted as to the terms under which the agent was entitled to a commission the contract controlled. In the case at bar the contract was for a period of 60 days from March 22, 1950 ( or May

21), and "shall continue thereafter until terminated by us by letter to you." The language of appellants' letter, which they contend terminated the contract, is set out in connection with the pleadings. It may be observed that appellees arranged for and a meeting was had on May 17 at the Kansas plant, where a proposed contract of sale was discussed. We shall not pursue the interesting question whether at that stage appellants could accept the fruits of appellees' work and at the same time terminate the contract. The language used in the May 10 letter does not state the time limit of sixty days fixed by the contract letter of March 22 will not be extended, nor does it state explicitly that the contract will be terminated. It evinces no clear, unambiguous purpose to rescind or to terminate the contract and does not meet the test stated in *Warrick v. Estate of McKnab,* 164 Kan. 78, 83, 187 P. 2d 502. And further, a claim that the contract was terminated is at variance and inconsistent with what occurred May 17, as above set forth, and the acceptance of appellees' services subsequent to the claimed date of termination. It may not be said the demurrer should have been sustained for the reason the broker's contract had been terminated.

3. Appellants devote considerable space to a discussion of their contentions they were not estopped to deny that the broker's contract had been terminated and that the broker did not introduce the buyer. The journal entry of judgment includes nothing indicating application of the doctrine. The trial court's remarks when deciding the case as included in the abstract make no reference to appellants being estopped. Although appellees did include allegations of estoppel in their reply and answered the appellants' argument in their brief, we think that there was no application of the doctrine as applied to the ruling on the demurrer. There is no contention there was any other application of it and it will not be discussed.

4. Appellants also contend recovery should have been denied for the reason the contract provided for the sale of real estate and there was no allegation or proof that appellees were real estate brokers as required by G. S. 1949, 67-1001, *et seq.,* and by our decision in *Deines v. Frevert,* 170 Kan. 278, 224 P. 2d 1023. A short answer to this contention is that examination of the contract shows that the provisions for sale of the capital shares or of the assets of the corporation were entirely separable from sale of the real estate and that there was provision for a commission on the sale of the business exclusive of the land and building. The contract

did not disclose any illegality on its face and the petition did not allege any sale of real estate. We shall not discuss the cases mentioned in the briefs of both parties.

In our opinion the trial court did not err in its ruling on the above matters, all of which are raised under appellants' demurrer to the evidence.

Under their contention of error in overruling their motion for a new trial, appellants discuss the remainder of their specifications of error.

Appellants first contend that indispensable parties were not made plaintiffs, in that the evidence disclosed that appellees had an agreement with others, not parties to the action, to divide the commission due under the contract, and, making the assumption such others were indispensable parties direct our attention to G. S. 1949, 60-412, that those who are united in interest must be joined as plaintiffs or defendants, and to *Price v. Carmean,* 136 Kan. 744, 18 P. 2d 197; *Hubert v. Board of Public Utilities,* 162 Kan. 205, 174 P. 2d 1017; and *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.,* 168 Kan. 259, 212 P. 2d 348; to the general effect that where indispensable parties to an action are not joined the action is subject to dismissal. However in the last case cited, it was held:

"In this jurisdiction objections to a petition founded on grounds that the plaintiff is not the real party in interest or that he had no legal capacity to maintain the action must be made by demurrer to the petition or by answer, otherwise they will be deemed to have been waived." (Syl. ¶ 4.)

In the instant case the appellants raised no question as to indispensable parties either by demurrer or by answer. However, we will not assume that other brokers were indispensable parties and then hold the appellants waived objection by failure to plead. The instant action is one to recover on a contract under which appellees and no others are entitled to a commission for services rendered, and the fact they may have agreed to divide the commission with other brokers who assisted them did not make such assisting brokers indispensable parties to an action on the contract. They were not parties to the contract and could not have maintained any action on it.

Appellants also contend the trial court erred in admitting in evidence certain letters and conversations between appellees and other brokers, it being contended the letters and conversations were hearsay and immaterial. If it be assumed the objections were

otherwise good, it appears that the trial was by the court. While objection to introduction of the evidence was made, the abstract does not disclose that any motion to strike was made and overruled. In such situation there is no presumption the evidence, if improperly admitted, entered into the final decision of the case. (See Supreme Court Rule 53.) However, we think it may not be said the objection to the evidence was good. The stated purpose was not to prove the truth of the content of the letters and conversations, but to show what appellees did in performing under the contract of March 22, 1950, and as such was proper.

Appellants also contend that the trial court erred in allowing interest on the amount of the commission found due from appellants to appellees. The principal contention swings on the proposition that in the prayer of the petition there was no statement of the time from which interest should be computed, as provided by G. S. 1949, 60-704, *Third,* and citing *Insurance Co. v. Weeks,* 45 Kan. 751, 758, 26 Pac. 410, and *Sentney v. Sinclair,* 130 Kan. 360, 286 Pac. 269, which may be said to support the contention that interest was not recoverable. It is true that while the petition alleged appellees were entitled to interest, neither in the allegations of the petition nor in the prayer was any date stated from which it was to be computed. The abstract discloses that the question was not raised by any attack on the petition, nor by any allegation in the answer. At the time when the trial court was rendering judgment, appellees asked for an allowance of interest from June 24, 1950 (date of sale contract). The trial court inquired if interest was asked for and appellants' counsel stated he did not remember. Thereupon the trial court allowed interest. Appellants' motion for a new trial did specify the trial court erred in allowing interest but appellees say that at the hearing of that motion the question as now presented was not raised, and the journal entry showing the overruling of the motion tends to sustain the contention. Appellees further say that if the contention now made had been presented to the trial court, they could have amended, something it is now too late to do. They direct our attention to *Eberle v. Loyal Protective Ins. Co.,* 119 Kan. 399, 239 Pac. 972, where it was held that error in calculating interest must be called to the attention of the trial court before a judgment will be reversed for that reason, and to other decisions that appellants cannot raise a question of error for the first time in the supreme court. They also argue that under substantive law they were en-

titled to interest; that the allowance thereof did not affect any of appellants' substantial rights, and that the error, if any, was technical, did not prejudice the substantial rights of appellants and is not ground for reversal, citing *Morrison v. Hawkeye Casualty Co.,* 168 Kan. 303, 309, 212 P. 2d 633. Solution of the question is perplexing, but we have concluded that by reason of what transpired when the judgment was entered that the error, if any, in allowing interest was at least, in part, attributable to the position taken by appellants before judgment was rendered; that appellees were deprived of any right to amend their petition to conform to statutory requirements, and that the judgment should not be disturbed because of the inclusion of interest. (See G. S. 1949, 60-3317.)

We now take up the appellees' cross-appeal. Heretofore we have summarized the judgment rendered on June 28, 1951, whereby appellees recovered a commission on the basic cash consideration of the sale of June 24, 1950, and a commission on two percent of gross sales for the first year, as well as interest. They were not allowed any recovery for a commission on the gross sales for the second and third years. Following the judgment appellees filed their motions for a limited new trial and for a modification of the judgment, the general purpose of which was to procure a modified or amplified judgment which would include the excluded commissions. These motions were denied and appeal followed.

At the trial, which occurred just a year following consummation of the sale, there was some evidence as to estimates made by Robert Meyer as to what sales would amount to in the first, second and third years if the plan of payment proposed be adopted, but it is quite apparent that these estimates were made and advanced as an inducement to procure the agreement as to the whole consideration as later adopted and reflected in the sales contract of June 24, 1950. It may be conceded that at the trial the evidence as to the first year's experience showed sales very close to the estimate, but the judgment of the trial court in this particular was based on the sales actually made and not on the estimate. In its remarks when rendering judgment the trial court stated it was not willing to speculate on the second or third years nor to accept the evidence given as competent to prove the amount of the sales for those years. Directing attention to the evidence mentioned, appellees cite *Outcault Adv. Co. v. Citizens Nat'l Bank,* 118 Kan. 328, 234 Pac. 988, 41 A. L. R. 194, where it was held that prospective profits,

which would have been realized had a contract been performed, may be allowed providing they are fairly within the contemplation of the parties and are susceptible of being ascertained with reasonable certainty, and they argue that the proof was sufficient under the evidence to warrant a judgment. We cannot agree. The character of the evidence has been mentioned. Ultimately the contract of sale was made. While it is true the broker's contract called for immediate payment of commission even though the consideration in event of a consummated sale was to be paid in installments, it likewise left to the seller the manner of sale, price, terms and conditions. As finally formed the contract of sale did not provide for installment payments—it did provide for a basic price and for further payments based on future sales. The provision was for a definite, although not then determinable amount. A situation was there created not definitely provided for in the broker's contract insofar as the commission due was concerned. The judgment covered a commission due appellees on the basic price and on the first year's sale, both of which were definitely ascertainable at the time of the trial. As to the second and third years, no amount was then due to the seller and any attempt to fix what that amount would be would have been premature. Until the amount of sales could be determined no cause of action accrued in favor of appellants against their purchaser and no cause of action accrued in favor of appellees against the appellants.

Consideration of the record convinces us that the judgment of the trial court should be, and it is, affirmed.

PRICE, J.; dissents from that portion of the opinion approving recovery of interest as a part of the trial court's judgment.