442 P.2d 165

Thomas BONASERA, Appellant,

v.

Don ROFFE and Mary A. Roffe,
his wife, Appellees.

No. 1 CA–CIV 448.

Court of Appeals of Arizona.

June 19, 1968.

Shimmel, Hill, Kleindienst & Bishop, by
Richard A. Black, Phoenix, for appellant.

Stevens & Leibow, by Howard P. Lei-
bow, Phoenix, for appellees.

HATHAWAY, Chief Judge.

Bonasera sued the Roffes for the sum of
$2,500, allegedly the unpaid balance of a
commission of $3,000 which the Roffes
orally promised to pay Bonasera to find a
buyer for Roffe's Red Rooster Tavern,
The property consisted of furniture, fix-
tures, equipment and a leasehold interest
in realty.

The cause was tried to the court. At the
conclusion of the trial, the matter was
taken under advisement. Subsequently,
judgment was entered for the defendants.
The court found that the transaction con-
stituted, " * * * one complete and entire
transaction involving both the lease of real-
ty and the sale of personal property, and
that it was necessary for the plaintiff to be
a licensed real estate broker in order to
obtain a commission * * * the plaintiff
was not a licensed real estate broker and
under the Statute cannot recover a com-
mission. * * *"

The record discloses that Bonasera was
a salesman for a beer distributor and did
not hold a real estate broker's or salesman's
license.

On appeal, Bonasera maintains that the
trial court erred in holding that A.R.S.
§ 32–2152 rendered the agreement unen-
forceable. He contends that a real estate

broker's license is not required of a person who engages in a single, isolated transaction. A.R.S. § 32–2152 provides that an action for collection of compensation earned by a real estate broker or salesman may be maintained in the courts of Arizona. The statute further provides:

"To commence the action the complaint shall allege that the plaintiff was a qualified licensed broker or salesman at the time the claim arose. Prior to hearing the action the court shall require the plaintiff to prove the alleged qualifications."

Included in A.R.S. § 32–2101, the definitions section of the article, is the following:

"1. 'Broker' or 'real estate broker' means a person, other than a salesman who, for another, *for compensation* or other valuable consideration, or with the intent, in the expectation, or upon the promise of receiving or collecting compensation or other valuable consideration:

\* \* \* \* \* \*

"(f) Assists in or directs the procuring of prospects or listings or the negotiation or closing of *any transaction* which results or is calculated to result in the sale, exchange, *leasing* or renting of any real estate." (Emphasis added.)

A.R.S. § 32–2122 provides:

"It shall be unlawful for any person to engage in the business of a real estate broker or salesman without first obtaining a license as prescribed in this chapter and otherwise complying with the provisions of this chapter."

The purpose underlying the statutes governing those occupied in real estate activities, is to protect the public from unscrupulous and unqualified persons. Northen v. Elledge, 72 Ariz. 166, 232 P. 2d 111 (1951). Our Supreme Court has adhered to a strict application of A.R.S. § 32–2152 (quoted above) to implement the intent expressed in the statutes. Accordingly, the courts will not be a party to the collection of fees sought in violation of the law. Hall v. Bowman, 88 Ariz. 409, 357 P.2d 149 (1960). The underlying public purpose is not served in subjecting an unsuspecting public to untested, unregulated practitioners of isolated transactions. We are of the opinion that these statutes are broad enough to include a business negotiation of the type involved here.

Bonasera also contends that, even if he is precluded from collecting a commission in the transaction because of the involvement of real estate therein, he should not be required to forfeit his commission because it is calculated solely on the value of personalty and the amount is readily ascertainable and severable in the agreement between the principals. We conclude that such is not the case and forbear to decide on that basis.

An integrated written agreement between the principals includes the leasing conditions and the terms for the sale of the chattels on which commission is sought. The lease and the sale of the chattels was made contingent upon the obtaining of a State of Arizona No. 7 spiritous liquor license upon the leased premises in the name of the purchaser-lessee. The evidence is clear that the sale of a business in an established location was contemplated, which necessarily was identified with the location of the existing Red Rooster Tavern. That the transaction was considered as a unit is further borne out in the letter of Bonasera's lawyer of October 3, 1962, to Roffe, where it was stated:

"We have been requested by Mr. Tom Bonasera to write to you regarding the payment of his commission earned by him as a result of his finding a person ready, willing and able to lease from you the tavern heretofore known as the Red Rooster Tavern at 6602 West Van Buren Street, Phoenix, Arizona.

"As per your agreement with Mr. Bonasera, he put you in contact with a person who bought certain furniture and fixtures at the tavern and entered into a lease of the premises. You agreed to pay Mr. Bonasera any sum over $6,000.00

which you would receive for the furniture, fixtures and good-will of the tavern. Mr. Bonasera found a buyer named Chet Lakicki who paid you $9,000.00 for the furniture and fixtures and has entered into a lease with you for the premises. Thus, Mr. Bonasera earned a commission of $3,000."

 Bonasera cannot establish entitlement to a commission by splitting the contract in an attempt to remove a portion of it from operation of the previously mentioned statutes. Kenney v. Paterson Milk & Cream Co., 110 N.J.L. 141, 164 A. 274, 88 A.L.R. 1416 (1933).

The judgment is affirmed.

MOLLOY and KRUCKER, JJ., concur.
NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.