No. 47,073

Robert W. Thomas, d/b/a Thomas Investment Company, and John A. Caves, *Appellants,* v. Mel L. Jarvis, a/k/a M. L. Jarvis and Butler Manufacturing Company, *Appellees.*

(518 P. 2d 532)

Opinion filed January 26, 1974.

*Eugene G. Coombs,* of Wichita, argued the cause, and *Daniel S. Garrity,* of Wichita, was with him on the brief for the appellants.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Darrell L. Warta,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

Prager, J.: This is an action brought by brokers against the owner-seller and purchaser to recover a commission on a written agency contract for the sale of corporate businesses. The plaintiff-appellant, Robert W. Thomas, carries on business under the name of Thomas Investment Company in Wichita, Kansas. The plaintiff-appellant, John A. Caves, was an employee of Thomas Investment Company. Thomas and Caves are specialists in the field of corporate mergers and acquisitions. They are business brokers. The defendant-appellee, Mel L. Jarvis, owned a controlling interest in three corporations: Mel Jarvis Construction Company, Inc., Salina Manufacturing Company, Inc., and Jarrett Electric, Inc. Jarvis desired to sell his interest in the three corporations. Jarvis sought the assistance of Thomas and Caves in the sale of the companies and entered into a written agreement by which Thomas and Caves contracted to make an effort to sell the three companies to a qualified buyer and were to receive a commission on the sale. The

written agreement entered into on March 18, 1968, provided in substance that Thomas Investment Company was to have the exclusive right to offer all or any of the three companies for sale for a period of 120 days from the date of the agreement and for two years thereafter as to contacts generated within the 120 days. Thomas Investment Company was to receive a 5% commission on the first $2,000,000 plus a 10% commission on any portion of the sale price over $2,000,000. The contract provided that the commission was to be paid irrespective of whether the companies were sold by a sale of the corporate assets to the purchaser or were sold by a sale of the capital stock of the companies. Caves as the representative of Thomas then proceeded to contact various prospective purchasers across the country to generate interest in the three Jarvis companies. Among the companies contacted was Butler Manufacturing Company, the defendant-appellee.. At that time Butler responded that it was not interested in purchasing the three Jarvis corporations. In August of 1969 negotiations were conducted between Butler and Jarvis which resulted in the sale of all the assets of Salina Manufacturing and Jarrett Electric to Butler Manufacturing on December 8, 1969. Thomas and Caves were not involved in these negotiations. At the time of the sale of the assets of Salina Manufacturing to Butler the total assets of Salina Manufacturing amounted to a value of $1,183,000 of which the land, improvements, buildings and other real property amounted to $172,000 or approximately 14% of the total amount of Salina's assets. At the time of the sale of the assets of Jarrett Electric to Butler the total value of the assets of Jarrett Electric amounted to $577,962 of which land, improvements to real property and buildings represented approximately $80,767 or approximately 15% of Jarrett's total assets. The total value of real estate sold to Butler as part of the assets of both companies was approximately $252,000.

In November of 1970, Thomas and Caves decided they were entitled to a commission on the sale of the assets of Salina Manufacturing and Jarrett Electric to Butler. They brought suit on their written agency contract made with Mel Jarvis. In their petition Thomas and Caves set forth several claims for relief. The first claim was based upon the right to receive a commission on the written agency agreement. The second claim was against Butler Manufacturing Company based upon tortious inducement to breach that contract. The third claim was against both Jarvis and Butler based upon an

alleged conspiracy of the defendants to defraud the plaintiffs of their commission. A number of defenses not involved here were asserted by defendants. The case was hotly contested and proceeded to trial before a jury. At the close of the plaintiffs' case the defendants moved for judgment of dismissal. The trial court sustained the motion for the reason that under the undisputed evidence the plaintiffs did not have a real estate brokers' license at the time the written agency agreement was entered into, that the written agency agreement provided for the sale of an interest in real estate and that under the undisputed facts the plaintiffs were barred from recovery under K. S. A. 58-3019 which provides that a real estate broker may not maintain an action for the collection of a commission for the sale of real estate without alleging and proving that he was a duly licensed real estate broker or salesman at the time the alleged cause of action arose. Thomas and Caves have appealed to this court.

The primary issue raised on this appeal may be simply stated as follows: May a business broker who enters into a written agency contract to sell the assets of companies which include real property recover a commission on the sale without having a real estate brokers' license? Specifically, do the plaintiffs as business brokers fall within the statutory definition of a real estate broker so as to be subject to the provisions of the licensing act? Since this case involves a question of statutory construction we should first look to the specific Kansas statutes which require a real estate broker to be licensed. The regulation of real estate brokers and sales is found in the Kansas Real Estate Brokers' License Act, K. S. A. 58-3001, *et seq.* K. S. A. 1972 Supp. 58-3002 contains the following definitions.

"58-3002. Definitions. Terms as used in this act are defined as follows: ( *a* ) 'Real estate broker' means any person, partnership, association, corporation, advance fee agent, or auctioneer, who for another and for a fee, commission, or other valuable consideration, or who with the intention or in the expectation or upon the promise of receiving or collecting a fee, commission, or other valuable consideration, sells, exchanges, purchases, or negotiates the sale, exchange, purchase of, or offers, or attempts, or agrees to negotiate the sale, exchange, purchase, or lists or offers or attempts or agrees to list, any real estate, or the improvements thereon; or who buys or offers to buy, sells or offers to sell or otherwise deals in options on real estate or the improvements thereon; or who advertises or holds himself, itself, or themselves out as engaged in the business of selling, exchanging, purchasing, renting or leasing real estate, *or assists or directs in the procuring of prospects or the negotiation or closing of any transaction which does or is calculated to result in the sale, exchange,*

674

*leasing or renting of any real estate;* or who is employed by or on behalf of the owner or owners of lots, or other parcels of real estate, at a stated salary, or upon a salary and commission basis or otherwise, to sell such real estate, or any part thereof, in lots or other parcels, and who shall sell or exchange, or offer or attempt or agree to negotiate the sale or exchange of any such lot or parcel of real estate;

"(*b*) 'real estate salesman' means any person employed or engaged by or on behalf of a real estate broker or by a partnership, association or corporation having one or more real estate brokers licensed under this act to perform any act set out in subsection (*a*) of this section for compensation or otherwise;

"(*c*) 'real estate' means leasehold, as well as any and every interest or estate in land, whether situated in Kansas or elsewhere: *Provided, however, That* the sale, exchange or other disposition of oil and gas leases, royalties and other mineral interests shall not be construed as within the terms of this act. . . ." (Emphasis supplied.)

It should be noted that under the statute a real estate broker is any person who for another for a fee or other valuable consideration assists or directs in the procuring of prospective buyers or the negotiation or closing of *any transaction* which does or is calculated to result in the selling or leasing or renting of *any real estate.* Under the undisputed facts here there is no question that the transaction between Jarvis and Butler Manufacturing did and was calculated to result in the sale of real estate of a value of approximately a quarter of a million dollars. 58-3002, the definition section, is immediately followed in the act by K. S. A. 1972 Supp. 58-3003 which contains nine specific exclusions from the operation of the act. None of these exclusions are applicable to the plaintiffs as brokers in this particular case. Other sections of the act regulate the business practices of real estate brokers and certain practices are prohibited. The manner and method of conducting the business is prescribed in some detail. The qualifications of real estate brokers are set forth with great specificity in K. S. A. 1972 Supp. 58-3006. K. S. A. 58-3018 makes it a criminal offense to engage in the business of real estate broker or salesman without having procured a license. K. S. A. 58-3019 makes a brokers' license a condition precedent to an action for compensation. 58-3019 specifically provides as follows:

"License a condition precedent to action for compensation. Any person engaged in the business of or acting in the capacity of a real estate broker or real estate salesman within this state, shall not be permitted to bring or maintain any action in the courts of Kansas for the collection of compensation for the sale of real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman or a partnership,

association or corporation whose members, officers and employees are licensed as required by this act at the time the alleged cause of action arose. . . ."

The purpose of the Real Estate Brokers' License Act is to protect the public from the fraud, misrepresentation, and imposition of dishonest and incompetent persons.

There are many cases throughout the United States on the question whether or not a business broker is required to obtain a real estate brokers' license. The determination of the necessity for a real estate brokers' license where the sale is of both real and personal property is usually held to depend upon the language of the particular statute under consideration. In some cases a business broker has been deemed to be a real estate broker within licensing statutes, but in other cases under other statutes a contrary conclusion has been reached. The cases which illustrate these different points of view are set forth in an annotation in 88 A. L. R. 1422 and in 12 Am. Jur. 2d, Brokers, § 15. The plaintiffs rely upon those cases which hold that business brokers are not real estate brokers within the statutory definition. The plaintiffs' position in substance is that it was not the intent of the legislature to extend K. S. A. 1972 Supp. 58-3002, to a situation such as is presented in this case, where the intention of the parties was to sell a *going business* and where the real estate sold was only incidental to the sale of the going concern. In support of their position the plaintiffs rely on decisions in New York, Arkansas and Colorado, which follow what is usually referred to as the New York rule. It is the minority rule in the United States. (*Weingast v. Rialto Pastry Shop, Inc.*, [1926] 243 N. Y. 113, 152 N. E. 693; *Reichardt v. Hill*, [1916] 236 F. 817; *Frier v. Terry*, [1959] 230 Ark. 302, 323 S. W. 2d 415; *Cary v. Borden Co.*, [1963] 153 Colo. 344, 386 P. 2d 585.) The statutory definition of a real estate broker in these states is more restrictive than are the statutory definitions in Kansas under 58-3002 and in those states which adopt the contrary position.

The majority rule adopted in the United States has become known as the New Jersey rule and is based upon *Kenney v. Paterson Milk & Cream Co.*, 110 N. J. L. 141, 164 A. 274. In addition to New Jersey the states which follow the New Jersey rule are: California, *Abrams v. Guston*, 110 Cal. App. 2d 556, 243 P. 2d 109; *DeMetre v. Savas*, 93 Ohio App. 367, 113 N. E. 2d 902; Washington, *Grammer v. Skagit Valley Lumber Co.*, 162 Wash. 677, 299 Pac. 376; Texas, *Breeding v. Anderson*, 152 Tex. 92, 254 S. W. 2d

377; *Hall v. Hard*, 335 S. W. 2d 584; Arizona, *Bonasera v. Roffe*, 8 Ariz. App. 1, 442 P. 2d 165. In these states which follow the New Jersey rule and require a business broker to have a real estate brokers' license, the statutory definitions of a real estate broker are comparable to the broad statutory definition provided in 58-3002.

We believe that the statutory language used in K. S. A. 1972 Supp. 58-3002, is determinative of the issue in the present case. The sale of the assets of Salina Manufacturing and Jarrett Electric to Butler fits squarely within the category of *"any transaction* which does . . . result in the sale . . . of *any real estate."* Obviously the legislature intended that the Real Estate Brokers' License Act should apply to all brokers who become involved in transactions which result in the sale of real estate. This court has required a strict compliance with the terms of that act if a broker is to use the courts for the collection of fees or commissions. (*Deines v. Frevert*, 170 Kan. 278, 224 P. 2d 1023.) Under the undisputed facts of this case the plaintiffs were not licensed real estate brokers and hence it appears to us that the statute is clearly applicable. *Harrington v. Propulsion Engine Corp.*, 172 Kan. 574, 241 P. 2d 733, is distinguishable because in *Harrington* it was specifically provided in the written agency contract that a commission on the sale of the business was to be *exclusive of the land and building.* Hence it was not a transaction which was calculated to result in the sale of real estate nor was the claim for a commission based upon the sale of real estate.

As an alternative position the plaintiffs contend that in the event the court holds that a real estate brokers' license was required, then the plaintiffs should be allowed to recover a commission on the sale of the personal assets of the corporations to Butler. The plaintiffs' position is that their right to recover a commission for the sale of personal property is severable and separate from the sale of real estate. Plaintiffs rely upon *Marks v. Walter G. McCarty Corp.*, 33 Cal. 2d 814, 205 P. 2d 1025; *Moreland v. Kilgore*, 83 Ga. App. 606, 64 S. E. 2d 295; and *Quick Shops of Mississippi, Inc. v. Bruce*, 232 S. 2d 351. The theory of severance is a new issue raised on this appeal and was not asserted in the trial court. In their pleadings and at the trial of the case the plaintiffs consistently maintained that their claim was based upon a specific written contract which gave them a commission based upon all assets sold.

There was only one commission to be paid covering the sale of all the assets of the Jarvis Companies. Under these circumstances we hold that the contract was an entire contract as to all the assets and not a severable one. (*Sykes v. Perry,* 162 Kan. 365, 176 P. 2d 579.)

The parties in their briefs have raised other points which need not be determined on this appeal in view of our sustaining the judgment of the trial court dismissing the case. For the reasons set forth above the judgment of the district court is affirmed.

FONTRON, J., dissenting: Because time is at a premium, my dissent must be brief. It is sufficient to say that in my judgment the minority rule, usually referred to as the New York rule, is far more sensible than the one adopted by this court. I would reverse this case with directions that a new trial be granted.

OWSLEY, J., joins in the foregoing dissenting opinion.