Charles M. KNIGHT, Plaintiff,

v.

E.H. JOHNSON, Defendant.

No. 52677.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 15, 1987.

Ernie Brasier, St. Louis, for plaintiff.

Bernard A. Barken, St. Louis, for defendant.

REINHARD, Judge.

Both parties appeal from a trial court order granting summary judgment to defendant on plaintiff's claim and summary judgment to plaintiff on defendant's counterclaim. We affirm.

In his petition plaintiff alleged that he had agreed with defendant that if he located a buyer for defendant's car wash defendant would pay him 10% of the gross sales price; that he located buyers who purchased the car wash for $150,000.00; that he had received $6,881.84 of the $15,000.00 commission from defendant; and that he had demanded the balance of $8,118.16 but defendant refused to pay.

In his answer defendant admitted an agreement with plaintiff, that plaintiff had located the buyers, and that he had paid defendant $7,048.46. As an affirmative defense defendant alleged that plaintiff's petition sought to recover compensation "for services in the buying, selling, exchanging, leasing, renting or negotiating a loan upon real estate within the intent and meaning of [§ 339.160, RSMo.1986]"; that plaintiff was not a licensed real estate broker or salesperson at the time of the transaction; and, because plaintiff's claim was "improper, illegal, and unlawful" he was "barred from any recovery...." Alleging the money he had already paid was "illegally, unlawfully, and improperly received by plaintiff," defendant asserted a counterclaim for $7,048.46.

Both parties filed motions for summary judgment contending that the pleadings, depositions, admissions, and affidavits showed that there existed no genuine issue of material fact. Those various documents reveal the following undisputed facts.

Plaintiff was a distributor of car washing equipment. In 1975 defendant purchased equipment from plaintiff and constructed a car wash on leased property in Berkeley, Missouri. In May 1977 the lease was assigned to defendant as lessee. In August 1984, at defendant's request, plaintiff prepared an appraisal of the car wash. Plaintiff valued the brick building, including exterior signs, gas furnace, water cooler, office equipment, floor safe, and center island house at $130,000.00; exterior landscaping and asphalt at $15,000.00; and the car washing equipment at $44,700 for a total of $189,700.00.

Plaintiff was not a licensed real estate broker or salesperson nor did he represent himself as one to defendant. On November 12, 1984, the parties entered into the following agreement:

### LISTING AGREEMENT

Agreement made this date by and between Mr. E.H. Johnson and Mr. Charles M. Knight, whereby Mr. Knight will use his best efforts to sell the Berkeley Car Wash.

This agreement will remain in effect for 60 days from above date and Mr. Johnson does hereby agree to pay Mr.

Knight 10% of the gross sale price to be negotiated between the buyer and the seller of Berkeley Car Wash.

The closing cost to be negotiated between buyer and seller.

Both parties signed the agreement which was typed on plaintiff's letterhead.

Prior to plaintiff's appraisal and the execution of the listing agreement, Paul Faix approached plaintiff about getting into the car wash business. On December 10, 1984, at plaintiff's office, plaintiff and Faix prepared a written offer for the car wash by filling out a "sale contract" form that plaintiff had obtained from an office supply store. Faix and his wife Janet offered to buy the car wash including "all improvements listed in appraisal dated August 10, 1984" for $150,000.00, and the contract was to be contingent on the Faixes' "satisfactory assumption of the existing lease" and their assumption of the existing Small Business Administration loan. Defendant accepted the offer on December 14, 1984. Plaintiff provided Paul Faix with the telephone numbers of the lessor and the appropriate person at the SBA, and Faix made arrangements with them to assume the lease and the loan.

On December 28, 1984, defendant and the Faixes executed an agreement prepared by the Faixes' attorney whereby defendant transferred to the buyers "the business including good will, equipment, improvements and fixtures" for $150,-671.60. On that same day, defendant assigned the lease to Faix.

The trial court granted summary judgment to defendant on plaintiff's claim finding that "[t]he sale of the Berkeley Car Wash involved the 'procuring of prospects' by Plaintiff 'calculated to result in the ... leasing ... of real estate' § 339.010.1(7),

RSMo. Plaintiff was not a 'licensed real estate broker' or 'real estate salesperson.' As a matter of law, the commission contract was unenforceable. § 339.160, RSMo." In granting summary judgment to plaintiff on defendant's counterclaim, the court stated that "[a] court will not aid either of two parties to an illegal contract, but will leave them where it found them."

Applicable principles of law governing appellate review of a summary judgment are well established. A summary judgment is appropriate only where documents on file, including pleadings, depositions, admissions, and affidavits, show there is no genuine issue of material fact and that any party is entitled to summary judgment as a matter of law. Rule 74.04(c); *Edwards v. Heidelbaugh*, 574 S.W.2d 25, 27 (Mo.App. 1978). Summary judgment, when appropriate, may be rendered against the moving party. Rule 74.04(c).

On appeal, plaintiff alleges the trial court erred in concluding his claim for compensation was barred by § 339.160, RSMo 1986.[1] Plaintiff contends his activities did not involve "procuring of prospects, calculated to result in the ... leasing or rental of real estate" as stated in § 339.010.1(7), RSMo 1986, and, therefore, Chapter 339 does not apply. Even if Chapter 339 does apply, he argues that he is seeking compensation for his part in the sale of an on-going business and not for "services rendered in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate ..." as stated in § 339.160 because the lease assignment was "merely incidental" to the sale of the business.

■ The issue presented by plaintiff's appeal is whether it is necessary for one to have a real estate broker or salesperson license to bring an action for a commission

---

**1.** Section 339.160, RSMo 1986, provides as follows:

No person, copartnership, corporation or association engaged within this state in the business or acting in the capacity of a real estate broker or real estate salesman shall bring or maintain an action in any court in this state for the recovery of compensation for services rendered in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person, copartnership, corporation, or association was a licensed real estate broker or salesman at the time when the alleged cause of action arose.

on the sale of a business when the transaction includes the transfer of an interest in real property. This issue was presented to us in *General Aggregate Corp. v. LaBrayere*, 666 S.W.2d 901 (Mo.App.1984) and to the southern district in *Ingalls v. Neufeld*, 487 S.W.2d 52 (Mo.App.1972). Neither case resolves the issue before us, however. In *Ingalls*, the trial court dismissed the plaintiff's petition for failure to state a claim. The court of appeals reversed because it was unclear from the face of the petition whether the plaintiff's action was barred by § 339.160. In *General Aggregate*, we did not resolve the issue because of our conclusion that the plaintiff was not a real estate broker as defined in § 339.010, RSMo 1969, the version of the statute in force in 1972–1974, the time of the events that gave rise to the plaintiff's claim.[2]

In 1978, however, the legislature amended § 339.010 to its present form, significantly altering its language. A "real estate broker" is now defined under § 339.010.1 to include "any person, copartnership, association or corporation, foreign or domestic who, for another, and for a compensation or valuable consideration ... (7) *[a]ssists or directs in the procuring of prospects, calculated to result in the* sale, exchange, *leasing or rental of real estate* ... (emphasis added)." Section 339.010

now provides a definition of "real estate," defining it to "mean and include, *leasehold, as well as any other interest* or estate in land, whether corporeal, incorporeal, freehold or nonfreehold ... (emphasis added)." § 339.010.4.

When the legislature amends a statute it " 'should be construed on the theory that the lawmakers intended to accomplish something by the amendment.' " *O'Neil v. State*, 662 S.W.2d 260, 262 (Mo. banc 1983) *citing City of Willow Springs v. Missouri State Librarian*, 596 S.W.2d 441, 444 (Mo. banc 1980); *State ex rel. Klein v. Hughes*, 351 Mo. 651, 656, 173 S.W.2d 877, 880 (1943). The current definitions of "real estate broker" and "real estate" are broad and cover the situation before us. Plaintiff procured buyers for the car wash, and the sale of the business was "contingent upon the satisfactory assumption of the existing lease." Thus, as a matter of law, the sale of the car wash was "calculated to result in the ... leasing ... of real estate."

■ Concerning plaintiff's argument that his activities concerned the sale of a business and that the lease assignment was "merely incidental" to the transaction, we note that § 339.010.5, RSMo 1986, lists specific situations in which Chapter 339 does not apply. A business broker is not listed among these exceptions.[3] When a statute

---

2. Section 339.010.1, RSMo 1969, defined a "real estate broker" as

any person, copartnership, association or corporation, foreign or domestic, who advertises, claims to be or hold himself out to the public as a real estate broker or dealer and who for a compensation or valuable consideration, as whole or partial vocation, sells or offers for sale, buys or offers to buy, exchanges or offers to exchange the real estate of others; or who leases or offers to lease, rents or offers for rent the real estate of others; or who loans money for others or offers to negotiate a loan secured or to be secured by a deed of trust or mortgage on real property.

3. In *King v. Clifton*, 648 S.W.2d 193 (Mo.App. 1983) the southern district observed that "[e]ven a casual reading of § 339.010.1(7) demonstrates *legislative intent to eliminate 'finder's' or 'business chance broker's' activity* from the list of functions excepted from the operation of the licensure statute." *Id.* at 197.

In *Thomas v. Jarvis*, 213 Kan. 671, 518 P.2d 532 (1974), the Kansas Supreme Court discussed the views from various jurisdictions on the question of whether a business broker is required to have a real estate broker's license. *Id.* 518 P.2d at 535–37. The court in *Thomas* rejected the minority "New York rule" that an unlicensed person may recover a commission on the sale of a going business if the real estate interest transferred was "only incidental to the sale of the going concern." Because of the language of Kan.Stat.Ann. § 58–3002 (Supp. 1972) (language similar in breadth to our statute), the court chose to follow the majority "New Jersey rule" as stated in *Kenney v. Paterson Milk & Cream Co.*, 110 N.J.L. 141, 164 A. 274 (1933), and deny recovery to the unlicensed business broker. The Kansas Supreme Court noted that it was not considering whether the broker was entitled to a commission on the sale of the personal property apart from the realty

specifically provides for exceptions, items not excluded are covered by the statute. *See Parvey v. Humane Society of Missouri,* 343 S.W.2d 678, 681 (Mo.App.1961). Because a business broker is not listed as an exception under § 339.010.5, one who acts as a business broker, when the transaction is "calculated to result in the sale, exchange, leasing or rental of real estate," is subject to the provisions of Chapter 339.

According to § 339.160 one acting in the capacity of a real estate broker, as we have determined plaintiff was doing, in order to bring an action for a commission, must plead and prove that he was licensed as a real estate broker or salesperson at the time of the transaction. *King v. Clifton,* 648 S.W.2d 193, 198 (Mo.App.1983). This the plaintiff did not, and could not, do. For the forgoing reasons, we hold that § 339.160, RSMo 1986, bars the plaintiff's claim as a matter of law.

■ We turn now to defendant's claim that the trial court erred in denying him recovery of the portion of the commission he has already paid to plaintiff. As a general rule,

> one who has paid money to an unlicensed person in consideration of the performance of a contract by such person is not entitled to recover back the money so paid on the ground that the contract was illegal because the person performing the contract did not have an occupational or business license or permit which he was by law required to have.

Annot., 74 A.L.R.3d 637, 642 (1976).

Any act forbidden by a statute passed for the public protection and providing a penalty for its violation cannot be the foundation of a valid contract. *King v. Moorehead,* 495 S.W.2d 65, 78 (Mo.App.1973). Section 339.180, RSMo 1986, provides in pertinent part that it is "unlawful for any person not licensed under this chapter to perform any act for which a real estate broker or salesperson license is required."

Chapter 339 is designed to protect the public from fraud and from being misled, *General Aggregate,* 666 S.W.2d at 908, and the chapter provides for penalties in § 339.170. Thus, it is appropriate for the law to leave the parties to an illegal listing agreement in the position in which they put themselves. *See Moorehead,* 495 S.W.2d at 78.

In *Buschbaum v. Barron,* 1 N.J.Super. 4, 61 A.2d 512 (1948), the plaintiff hired the defendant as a business broker to find a buyer for his business. The defendant was successful and the plaintiff sold the business. The plaintiff sued to recover the commission retained by the defendant on grounds that the transaction included a transfer of the leasehold and the defendant did not have a real estate broker's license. The New Jersey Superior Court, Appellate Division, reversed a judgment for the plaintiff, holding that one who voluntarily pays a commission under a mistake of law or pursuant to an illegal bargain is not entitled to rescission. 61 A.2d at 513.

In *Main v. Taggares,* 8 Wash.App. 6, 504 P.2d 309 (1972), the court confronted an action by a seller of realty for a refund of a real estate broker's commission paid to the unlicensed defendant. The court, pointing out that the law requiring real estate brokers to be licensed was penal in nature and to be strictly construed, stated

> The legislative act before us is not remedial in nature and does not afford a remedy to a party who deals with an unlicensed broker. The act, penal in nature, was passed by the legislature to assure the fiscal responsibility and competency of [real estate brokers]. Thus the statute in this case does not expressly void contracts entered into by unlicensed brokers, but rather prohibits those brokers from suing to recover a commission. In view of the above rationale plaintiff is not entitled to recover the $6,000 previously paid defendant.

504 P.2d at 312–13.

We believe the reasoning of the New Jersey and Washington appellate courts is

because the issue of severability had not been before the trial court.

Severability is not an issue in the case before us.

sound and defendant is not entitled to recover the money he has already paid to plaintiff.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.