MICHAEL J. FORD, APPELLANT, V. AMERICAN MEDICAL INTERNATIONAL, INC., A DELAWARE CORPORATION, APPELLEE.

422 N.W.2d 67

Filed April 15, 1988.   No. 86-247.

Thomas C. McGowan of McGrath, North, O'Malley & Kratz, P.C., for appellant.

Lyman L. Larsen and Patricia A. Zieg of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and WOLF and McGINN, D. JJ.

WHITE, J.

This is an appeal from an order of the district court for Douglas County sustaining defendant-appellee's motion for summary judgment.

Plaintiff-appellant, Michael J. Ford, filed an action against American Medical International, Inc. (AMI), seeking recovery

of $380,000 in fees, which Ford alleges AMI agreed to pay him if the corporation acquired St. Joseph Hospital in Omaha.

According to Ford's petition, AMI, through its representative Kenneth Diamond, requested Ford's assistance in approaching the hospital about a possible acquisition or merger. It is further alleged that AMI orally agreed to pay Ford for his services in an amount equal to 1 percent of the consideration paid by AMI if the acquisition was consummated. "AMI stated that it would prepare a written contract confirming these terms . . . and forward [it] to Ford." That written contract was never received by Ford.

Ultimately, a "lease and agreement" arrangement was entered into between AMI and the hospital. Ford alleges that despite repeated demands for payment of his fees, AMI has refused to pay the commission agreed to by the parties.

AMI moved for a summary judgment in the case based on the Nebraska Real Estate License Act, Neb. Rev. Stat. §§ 81-885.01 et seq. (Reissue 1987). Following a hearing where evidence was adduced by both parties, the district court sustained the motion for summary judgment based on §§ 81-885.01, 81-885.03, and 81-885.06. Ford appeals and alleges that the court erred in finding that he was a "broker" within the meaning of the statute because the transaction was for the acquisition of an *ongoing business*, not *real estate*, as defined by the Nebraska Real Estate License Act. His second assigned error alleges that the district court erred in adopting the so-called New Jersey rule announced in *Kenney v. Paterson Milk & Cream Co.*, 110 N.J.L. 141, 164 A. 274 (1933).

The Nebraska Real Estate License Act requires that all persons who act as real estate brokers, as defined therein, in exchange for a fee, must be licensed by the State Real Estate Commission. Section 81-885.02 provides that

> it shall be unlawful for any person, directly or indirectly, to engage in or conduct, or to advertise or hold himself or herself out as engaging in or conducting the business, or acting in the capacity, of a real estate broker . . . within this state without first obtaining a license . . . unless he or she is exempted from obtaining a license under section 81-885.04.

Section 81-885.01(1) defines real estate as follows: "Real estate shall mean and include condominiums and leaseholds, as well as any other interest or estate in land, whether corporeal, incorporeal, freehold, or nonfreehold, and whether the real estate is situated in this state or elsewhere." Subsection (2) provides in pertinent part that

> [b]roker shall mean any person who for a fee, commission, or any other valuable consideration, or with the intent or expectation of receiving the same from another, negotiates or attempts to negotiate the listing, sale, purchase, exchange, rent, or lease or option for any real estate or improvements thereon, or assists in procuring prospects . . . for the listing, sale, purchase, exchange, renting, leasing, or optioning of any real estate . . . or holds himself or herself out as engaged in any of the foregoing.

Further, § 81-885.06 provides in part:

> No action or suit shall be instituted, nor recovery be had, in any court of this state by any person for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of sections 81-885.01 to 81-885.48, to other than licensed brokers, licensed associate brokers, or licensed salespersons.

At the hearing on the motion for summary judgment, and in this court, AMI contends that even if a fee agreement was entered into between Ford and AMI (a fact which AMI denies), such agreement was "entered into contrary to the laws of the State of Nebraska and the statutes simply bar any action."

Appellant, on the other hand, argues that the Nebraska Real Estate License Act is inapplicable in this case. Ford asserts that the transaction contemplated by AMI and St. Joseph Hospital was *not a real estate transaction*, but instead was for the acquisition of an *ongoing business*. This fact, Ford claims, puts his activities and the transaction related thereto outside the statutes, since any real estate transfer was merely incidental to the acquisition of the ongoing business. Given the clear language of the statutes involved, we cannot agree with appellant's characterization of events. For the following

reasons, we hold that the order sustaining AMI's motion for summary judgment was proper.

The record discloses that Ford owned his own business, Michael J. Ford and Associates, which was a "consulting business primarily in the medical field." The "primary purpose of the corporation" was consulting and constructing surgical centers in Omaha and around the country. Neither Ford nor his corporation held a Nebraska real estate license during the years 1975 to 1985.

Ford's activities in 1983 relating to the AMI-St. Joseph Hospital transaction are described in the pleadings and his deposition as follows:

"[N]egotiating the terms . . . on which Saint Joseph's Hospital would be willing to negotiate, i.e., it required my negotiating the terms that were subsequently in the contract."

"The contract [between AMI and Ford] said that I was to establish the . . . contact with Saint Joseph's Hospital on behalf of AMI and for that I was to be paid a finder's fee."

"Ford . . . was authorized to represent AMI in approaching St. Joseph's Hospital . . . concerning a possible acquisition or merger."

"Ford expended considerable time, effort and expense, including numerous conversations and meetings" wherein he "negotiated the basic terms and conditions of the subsequent acquisition/merger of St. Joseph's Hospital by AMI."

"Ford arranged for [the initial] meeting . . . between AMI and representatives of St. Joseph's Hospital at Ford's office. . . . Ford was present and assisted in negotiations and discussions throughout said meeting."

"Ford was the effective procuring cause of the acquisition . . . . ."

When the above-described activities are compared with the language of § 81-885.01, it seems clear that Ford is a "person who . . . with the . . . expectation of receiving [a fee] from another, negotiate[d] or attempt[ed] to negotiate the . . . sale, purchase, . . . or lease" of St. Joseph Hospital, and "assist[ed] in procuring prospects . . . for the . . . sale, purchase, [or] leasing" of said hospital. The final "lease and agreement" transaction between AMI and St. Joseph Hospital, allegedly

procured by Ford's efforts, states that AMI agrees to lease "the Hospital" which is defined as a "fee simple interest in the Real Estate described on Exhibit A, attached hereto . . . ." Exhibit A set forth in exhaustive detail the legal description of all such real estate leased. In addition, the leasehold included "[a]ll tangible personal property, fixtures and equipment . . . upon the Real Estate . . . ."

This transaction may be, in part, a lease of an "ongoing business." However, the enterprise of operating a hospital is not severable from the "real estate and improvements thereon." § 81-885.01(2). Our statutes prohibit *any* unlicensed person (aside from those explicitly excepted in § 81-885.04) from negotiating, attempting to negotiate, or assisting in procuring prospects for the sale or lease of "*any* real estate or improvements thereon." § 81-885.01(2). The transaction in this case clearly falls within the broad scope of this statutory scheme.

The result we reach in this opinion is supported by case law in jurisdictions with statutory language similar to ours. One such example is *Thomas v. Jarvis*, 213 Kan. 671, 518 P.2d 532 (1974). In that case the Supreme Court of Kansas held that a "business broker" who contracts to sell the assets of companies which include real estate is a "real estate broker" and must be licensed, according to the "broad statutory definition." The Kansas statute referred to in that case, Kan. Stat. Ann. § 58-3002 (Supp. 1972), contains language very similar to our § 81-885.01. See, also, cases collected at Annot., 82 A.L.R.3d 1139, § 3 (1978).

We are not unmindful of the fact that the "New Jersey rule" (based upon *Kenney v. Paterson Milk & Cream Co.*, 110 N.J.L. 141, 164 A. 274 (1933)), adopted by the Kansas court in *Thomas* and set forth above, has been recently modified by the Supreme Court of New Jersey in *Kazmer-Standish Consultants v. Schoeffel Instrum. Corp.*, 89 N.J. 286, 445 A.2d 1149 (1982). The New Jersey court held that an unlicensed business broker may "recover a commission on the portion of the sale of an ongoing business attributable to personal property even if the sale includes an interest in real estate." *Id*. at 293, 445 A.2d at 1152. The modification of *Kenney* was based on the court's

holding that "business brokers" were not included in the statutory definition of "real estate broker." *Id.*; N.J. Stat. Ann. § 45:15-3 (West 1978).

We note, however, that no other state court has followed this "modified New Jersey rule." In addition, Nebraska's statutory definitions of "real estate" and "broker" include language not found in New Jersey's statute. This state has chosen to define brokers as *"any* person" who seeks compensation for the doing of an act described in § 81-885.01(2) as to *"any* real estate *or improvements thereon."* Given Nebraska's definition of "real estate" and "broker" set forth in § 81-885.01, we conclude that "business brokers" do fall within the scope of our statutes if the attempted sale or lease involves the transfer of any interest in real estate.

The only exceptions to the licensure requirement of the act are found in § 81-885.04. The provisions of the Nebraska Real Estate License Act do not apply to:

(1) Any person, partnership, or corporation who as owner or lessor shall perform any of the acts described in subdivision (2) of section 81-885.01 with reference to property owned or leased by them, or to the regular employees thereof, with respect to the property so owned or leased, when such acts are performed in the regular course of or as an incident to the management, sale, or other disposition of such property, and the investment therein; *Provided*, that such regular employees shall not perform any of the acts described in subdivision (2) of section 81-885.01 in connection with a vocation of selling or leasing any real estate or the improvements thereon;

(2) An attorney in fact under a duly executed power of attorney to convey real estate from the owner or lessor or the services rendered by any attorney at law in the performance of his or her duty as such attorney at law;

(3) Any person acting as receiver, trustee in bankruptcy, administrator, executor, or guardian, or while acting under a court order or under the authority of a will or of a trust instrument or as a witness in any judicial proceeding or other proceeding conducted by the state or any governmental subdivision or agency;

(4) Any person acting as the resident manager of an apartment building, duplex, apartment complex, or court, when such resident manager resides on the premises and is engaged in the leasing of property in connection with his or her employment;

(5) Any officer or employee of a federal agency in the conduct of his or her official duties;

(6) Any officer or employee of the state government or any political subdivision thereof performing his or her official duties for real estate tax purposes, or performing his or her official duties related to the acquisition of any interest in real property when the interest is being acquired for a public purpose;

(7) Any person or any employee thereof who renders an estimate or opinion of value of real estate or any interest therein when such estimate or opinion of value is for the purpose of real estate taxation; or

(8) Any person who, for himself or herself or for others, purchases or sells oil, gas, or mineral leases or performs any activities related to the purchase or sale of such leases.

Appellant herein has not alleged in any court that he falls within one of the above-mentioned exceptions, and the record is devoid of any evidence to support such a conclusion. Nor does any party challenge the validity of this statutory scheme and its exceptions. Absent an applicable exception to shield appellant from the statute's sweeping language, we are compelled to conclude that Ford's actions and the transaction involved herein are covered by this act.

Given the result reached in this opinion, it is unnecessary to discuss appellant's third assignment of error.

In considering a motion for summary judgment, the evidence is to be viewed in the light most favorable to the party against whom the motion is directed, giving to that party the benefit of all reasonable inferences which may be drawn from the evidence. *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). Taking the evidence presented herein in a light most favorable to appellant, even if it is assumed that a valid contract for a "finder's fee" did exist, it would not benefit Ford. Section 81-885.06 bars any action or

233

recovery on such an agreement in this case. Appellee is entitled to judgment as a matter of law. The district court's order sustaining AMI's motion for summary judgment is affirmed.

AFFIRMED..