268 Neb. 520
RICHARD CHAPIN, DOING BUSINESS AS CHAPIN ENTERPRISES, APPELLEE,
v.
NEUHOFF BROADCASTING-GRAND ISLAND, INC., AN ILLINOIS CORPORATION, APPELLANT.
No. S-03-241.
Supreme Court of Nebraska.
Filed August 6, 2004.
Daniel M. Placzek and Caroline M. Cooper, of Leininger, Smith, Johnson, Baack, Placzek, Steele & Allen, for appellant.
William F. Austin and Travis A. Ginest, of Erickson & Sederstrom, P.C., for appellee.
HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

NATURE OF CASE
McCORMACK, J.
This case involves the sale of the KSYZ-FM radio station in Grand Island, Nebraska, by Neuhoff Broadcasting-Grand Island, Inc. (Neuhoff), to Waitt Media (Waitt). Richard Chapin, doing business as Chapin Enterprises (Chapin), brought this action against Neuhoff, seeking compensation on the theory of quantum meruit for brokerage services he provided in connection with the sale. A jury returned a verdict in favor of Chapin, prompting this appeal by Neuhoff. We reverse the judgment of the district court in favor of Chapin. We conclude that Chapin is barred from recovering any compensation for his services because he acted as a broker under the Nebraska Real Estate License Act without obtaining a real estate license.

BACKGROUND
Chapin has worked in the radio industry for more than 50 years, all but a few of them as a media broker. He described a media broker's job as "bring[ing] together a willing buyer and a willing seller of a radio property." Chapin estimated that he has served as a broker for 75 to 100 radio station sales. His commission is typically paid by the seller and is usually calculated based on the "Lehman Commission Formula." Under this formula, a broker's commission is equal to 5 percent of the first $1 million of the sale, 4 percent of the second $1 million, 3 percent of the third $1 million, 2 percent of the fourth $1 million, and 1 percent of everything over $4 million.
In addition to serving as a media broker, Chapin has also owned radio stations in the past. He owned KSYZ-FM for several years before selling it in 1999 to Neuhoff for $5.9 million. After the sale was complete, Neuhoff asked Chapin to help it obtain other radio stations in the Grand Island area as a part of Neuhoff's "clustering" business strategy. Clustering involves forming a group of stations in a narrow geographic area, which offers advertising and programming advantages to the owner of the stations. Neuhoff was unsuccessful in its attempt to cluster radio stations in the area. As a result, in February or March 2000, Neuhoff decided to sell KSYZ-FM.
Chapin approached several potential buyers of KSYZ-FM on behalf of Neuhoff to gauge their interest in its purchase, including Waitt. Neuhoff's asking price for KSYZ-FM was $6.9 million, which Waitt initially balked at. However, in July 2000, Neuhoff and Waitt eventually agreed upon a price of $6.6 million for the station. Chapin testified that during the course of negotiating the sale price, it was he who made the contacts back and forth between Neuhoff and Waitt.
The sale of KSYZ-FM from Neuhoff to Waitt was governed by two documents: a local marketing agreement and a deferred asset purchase agreement. Chapin testified that these documents were drafted by Neuhoff's and Waitt's attorneys and that he played no part in negotiating the many specific terms included in them. The deferred asset purchase agreement provided that Waitt would initially pay Neuhoff a downpayment of $1.32 million for the station and would later pay $5.28 million upon closing, for a total payment of $6.6 million. The deferred asset purchase agreement further included a list of assets to be conveyed to Waitt as a part of the sale of the station. Those assets included "all interests and options in real property, including, without limitation, real property owned in fee, by easement, by right-of-way or otherwise occupied pursuant to a leasehold or other occupancy agreement, together with any and all improvements, fixtures and towers located thereon." The president and chief executive officer of Neuhoff testified that the sale of the station included a tower, a studio, and a parcel of land where the transmitting facilities and tower are located.
Chapin eventually became aware that Neuhoff and Waitt had executed the two agreements. He then contacted Neuhoff regarding his expected fee in a November 7, 2000, letterthe first in a series of letters over the next few months between Chapin and Neuhoff pertaining to Chapin's expected fee. When the parties could not reach an amicable resolution of the matter, Chapin filed this action against Neuhoff. The case was tried to a jury, which returned a verdict in favor of Chapin in the amount of $66,000. Judgment was entered accordingly, followed by Neuhoff's appeal and our movement of the appeal from the Nebraska Court of Appeals' docket to our own.

ASSIGNMENTS OF ERROR
Neuhoff assigns that the district court erred in (1) denying its motion for directed verdict made at the close of Chapin's case in chief and at the close of all the evidence, (2) admitting the expert testimonies of Chapin and a vice chairman at Waitt, and (3) excluding the expert testimony of a media broker.

STANDARD OF REVIEW
[1,2] When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. Houston v. Metrovision, Inc., 267 Neb. 730, 677 N.W.2d 139 (2004). In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. Hamilton v. Bares, 267 Neb. 816, 678 N.W.2d 74 (2004).

ANALYSIS
Neuhoff argues that the district court erred in denying its motion for a directed verdict because Chapin was barred, as a matter of law, from recovering a brokerage fee for the services he provided in connection with the sale of KSYZ-FM. Neuhoff bases its argument in part upon the Nebraska Real Estate License Act (the Act), Neb. Rev. Stat. § 81-885.01 et seq. (Reissue 1996 & Cum. Supp. 2000).
Section 81-885.06 provides in part:
No action or suit shall be instituted, nor recovery be had, in any court of this state by any person for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the Nebraska Real Estate License Act to other than licensed brokers, licensed associate brokers, or licensed salespersons.
Section 81-885.02 provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, to engage in or conduct, or to advertise or hold himself or herself out as engaging in or conducting the business, or acting in the capacity, of a real estate broker . . . within this state without first obtaining a license as such broker . . . as provided in sections 81-885.01 to 81-885.48, unless he or she is exempted from obtaining a license under section 81-885.04.
Neuhoff argues that Chapin is barred from recovery under § 81-885.06 because he engaged in actions prohibited by the Act, that is, he acted as a real estate broker without a license. It is undisputed that Chapin did not hold a real estate broker's license at any relevant time in this case.
Chapin does not argue that any of the exceptions to the licensure requirement in § 81-885.04 apply to him, nor does the record support such a conclusion. Instead, he argues that he did not act as a broker, as that term is defined in § 81-885.01(2), thus rendering the Act inapplicable to this case.
The applicable version of § 81-885.01(2) defines a broker in part as:
any person who, for a fee, a commission, or any other valuable consideration or with the intent or expectation of receiving the same from another, negotiates or attempts to negotiate the listing, sale, purchase, exchange, rent, lease, or option for any real estate or improvements thereon, or assists in procuring prospects or holds himself or herself out as a referral agent for the purpose of securing prospects for the listing, sale, purchase, exchange, renting, leasing, or optioning of any real estate or collects rents or attempts to collect rents, gives a broker's price opinion or comparative market analysis, or holds himself or herself out as engaged in any of the foregoing.
Whether a person acted as a broker under § 81-855.01(2) was the issue presented in Ford v. American Medical International, 228 Neb. 226, 422 N.W.2d 67 (1988). In that case, Michael J. Ford alleged the existence of an agreement between himself and the defendant under which Ford would be paid a fee for his services in assisting the defendant in acquiring a hospital. The acquisition was eventually consummated, but the defendant refused to pay Ford a commission. As in the present case, the defendant argued that Ford was barred from recovering a fee because he did not hold a real estate broker's license, while Ford argued that the Act was not applicable because he did not act as a broker.
This court concluded that the defendant was entitled to summary judgment because Ford acted as a broker under § 81-855.01(2). The evidence established that Ford approached the hospital about a possible acquisition, arranged for a meeting between the defendant and the hospital, and negotiated the terms of the acquisition. Viewing that evidence in the light most favorable to Ford, we stated that "it seems clear that Ford is a `person who . . . with the . . . expectation of receiving [a fee] from another, negotiate[d] or attempt[ed] to negotiate the . . . sale, purchase, . . . or lease' of St. Joseph Hospital, and `assist[ed] in procuring prospects . . . for the . . . sale, purchase, [or] leasing' of said hospital." Ford v. American Medical International, 228 Neb. at 229, 422 N.W.2d at 70. We also rejected Ford's characterization of the acquisition of the hospital as one of an ongoing business in which any transfer of real estate was merely incidental to the transaction. We noted that the broad language of § 81-885.01(2) provided, as it does today, that a broker is one who negotiates, attempts to negotiate, or assists in procuring prospects for the sale or lease of "`any real estate or improvements thereon.'" (Emphasis in original.) 228 Neb. at 230, 422 N.W.2d at 70.
Our holding in Ford was also applied in First Corporate Fin. v. Rogers, 237 Neb. 727, 467 N.W.2d 853 (1991). In that case, the plaintiffs aided the defendants in acquiring an ongoing wholesale distribution business. This court relied solely upon Ford and affirmed a summary judgment award in favor of the defendants because the plaintiffs did not hold a real estate license and because one of the assets acquired by the defendants was a leasehold interest in certain warehouse property.
The rule of Ford v. American Medical International, supra, and First Corporate Fin. v. Rogers, supra, controls our decision here. Chapin testified that after Neuhoff decided to sell KSYZ-FM, he approached two potential buyers of the radio station, including Waitt. Chapin conveyed Neuhoff's asking price for the radio station to Waitt and subsequently conveyed Waitt's rejection of that offer back to Neuhoff. Chapin further testified that during the course of the negotiations over the sale price, it was he who made the contacts between Neuhoff and Waitt. These actions indicate that Chapin, with the expectation of receiving compensation, "negotiate[d] or attempt[ed] to negotiate the . . . sale . . . for any real estate or improvements thereon" and also "assist[ed] in procuring prospects . . . for the . . . sale . . . of any real estate." See § 81-885.01(2).
Chapin argues that he did not negotiate the sale of KSYZ-FM because he played no part in the negotiation and drafting of the two documents governing the sale. Ignoring for a moment our conclusion that Chapin acted as a broker by assisting in procuring prospects for the sale of any real estate, his own testimony belies his contention that he did not negotiate or assist in negotiating the sale of any real estate. By his own admission, Chapin was involved in the negotiation of one essential term of the agreements: the sale price.
[3] Chapin further argues that the sale price was merely a function of KSYZ-FM's "book of business" and its Federal Communication Commission license and was not meant to reflect any real estate that may have been a part of the transaction. We interpret this argument as advocating an abandonment of the bright line rule of Ford v. American Medical International, 228 Neb. 226, 422 N.W.2d 67 (1988). We recognize that other states allow business brokers who do not hold a real estate broker's license to receive a commission when a transaction includes some real estate. See, e.g., Business Brokerage Centre v. Dixon, 874 S.W.2d 1 (Tenn. 1994) (holding that business broker, although not licensed real estate broker, may recover commission if real estate component is merely incidental to sale of entire business); Kazmer-Standish Consultants v. Schoeffel Instrum. Corp., 89 N.J. 286, 445 A.2d 1149 (1982) (holding that business broker, although not licensed real estate broker, may recover commission on portion of sale of ongoing business attributable to personal property, even if sale includes interest in real estate). However, beginning with our decision in Ford v. American Medical International, supra, 16 years ago, it has been the law in Nebraska that the Act's licensure requirement for real estate brokers applies to transactions that involve any real estate or improvements thereon. We are reminded that where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. Dawes v. Wittrock Sandblasting & Painting, 266 Neb. 526, 667 N.W.2d 167 (2003). Should the Legislature disagree with our broad interpretation of the definition of real estate broker, it is free to make the necessary amendments, just as it has been for the past 16 years.
[4] In addition, the rule of Ford v. American Medical International, supra, is consistent with the legal principle of expressio unius est exclusio alterius: the expression of one thing is the exclusion of the others. This legal principle recognizes the general principle of statutory construction that an expressed object of a statute's operation excludes the statute's operation on all other objects unmentioned by the statute. Pfizer v. Lancaster Cty. Bd. of Equal., 260 Neb. 265, 616 N.W.2d 326 (2000). The Legislature has excluded persons acting in a number of different capacities from the Act in § 81-885.04, but has not chosen to exclude business brokers negotiating the sale of an ongoing business that only incidentally includes real estate. The Legislature's failure to provide an exception for that situation, where it has expressly provided exceptions for others, indicates the Legislature's intent that all nonexcluded situations be subject to the Act. Put another way, "[w]hen a statute specifically provides for exceptions, items not excluded are covered by the statute." Knight v. Johnson, 741 S.W.2d 842, 845-46 (Mo. App. 1987).
Section 81-885.01(2) applies to a transaction that involves the sale of any real estate or improvements thereon. See Ford v. American Medical International, supra. The sale of KSYZ-FM included a tower, transmitters, a studio, and a parcel of land where they are located. Thus, Chapin's activities fall squarely within the purview of § 81-885.01(2).

CONCLUSION
As an unlicensed real estate broker, § 81-885.06 prohibits Chapin from recovering compensation for the services he provided to Neuhoff. Thus, we conclude that Neuhoff was entitled to a directed verdict as a matter of law. Given this result, it is unnecessary to address Neuhoff's remaining assignments of error. The judgment of the district court is reversed.
REVERSED.
Stephan and Miller-Lerman, JJ., not participating.